MEDIATION, TRLSET

# U.S. District Court
# Middle District of Florida (Ocala)
# CIVIL DOCKET FOR CASE #: 5:17-cv-00562-JSM-PRL

Erickson v. Merck & Co., Inc. et al
Assigned to: Judge James S. Moody, Jr
Referred to: Magistrate Judge Philip R. Lammens
Case in other court: Volusia County Seventh Judicial Circuit, 2017
　　　　　　　　　　31439 CICI
Cause: 28:1446 Notice of Removal

Date Filed: 09/21/2017
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Federal Question

**Plaintiff**

**Robert Erickson**　　　　　　　　　represented by　**Carmen A. DeGisi**
　　　　　　　　　　　　　　　　　　　　　　　　　Marc J. Bern & Partners LLP
　　　　　　　　　　　　　　　　　　　　　　　　　101 W. Elm Street, Ste. 215
　　　　　　　　　　　　　　　　　　　　　　　　　Conshohocken, PA 19428
　　　　　　　　　　　　　　　　　　　　　　　　　610/941-4444
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 610/941-9881
　　　　　　　　　　　　　　　　　　　　　　　　　Email: cdegisi@bernllp.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Merck & Co., Inc.**　　　　　　　　　represented by　**Christopher Joseph Conoscenti**
　　　　　　　　　　　　　　　　　　　　　　　　　Venable, LLP
　　　　　　　　　　　　　　　　　　　　　　　　　Suite 900
　　　　　　　　　　　　　　　　　　　　　　　　　750 E Pratt St.
　　　　　　　　　　　　　　　　　　　　　　　　　Baltimore, MD 21202
　　　　　　　　　　　　　　　　　　　　　　　　　410/244-7722
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 410/244-7742
　　　　　　　　　　　　　　　　　　　　　　　　　Email: cjconoscenti@venable.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*PRO HAC VICE*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　**David J. Walz**
　　　　　　　　　　　　　　　　　　　　　　　　　Carlton Fields Jorden Burt, PA
　　　　　　　　　　　　　　　　　　　　　　　　　4221 W Boy Scout Blvd Ste 1000
　　　　　　　　　　　　　　　　　　　　　　　　　PO Box 3239
　　　　　　　　　　　　　　　　　　　　　　　　　Tampa, FL 33601-3239
　　　　　　　　　　　　　　　　　　　　　　　　　813/223-7000
　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 813/229-4133
　　　　　　　　　　　　　　　　　　　　　　　　　Email: dwalz@carltonfields.com
　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　**Dino Santo Sangiamo**

Venable, LLP*
Suite 900
750 E Pratt St
Baltimore, MD 21201
410/244-7400
Email: dssangiamo@venable.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward W. Gerecke**
Carlton Fields Jorden Burt, PA
4221 W Boy Scout Blvd Ste 1000
PO Box 3239
Tampa, FL 33601-3239
813/223-7000
Fax: 813/229-4133
Email: egerecke@carltonfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Merck Sharp & Dohme Corp.**     represented by    **Christopher Joseph Conoscenti**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David J. Walz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dino Santo Sangiamo**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward W. Gerecke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**McKesson Corp.**     represented by    **Brett J. Preston**
Hill Ward Henderson, PA
101 E Kennedy Blvd - Ste 3700
PO Box 2231
Tampa, FL 33602-5195
813/221-3900
Fax: 813/221-2900
Email: brett.preston@hwhlaw.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Matthew F. Hall**
Hill Ward Henderson, PA
101 E Kennedy Blvd - Ste 3700
PO Box 2231
Tampa, FL 33602-5195
813-221-3900
Fax: 813-221-2900
Email: mhall@hwhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carolina Yvonne Blanco**
Hill Ward Henderson, PA
101 E Kennedy Blvd - Ste 3700
PO Box 2231
Tampa, FL 33602-5195
813/221-3900
Fax: 813-221-2900
Email: carolina.blanco@hwhlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/21/2017 | 1 | NOTICE OF REMOVAL from Volusia County Seventh Judicial Circuit, case number 2017-31439-CICI filed in State Court on 8/18/17. Filing fee $ 400, receipt number ORL67090 filed by Merck & Co. Inc. and Merck Sharp & Dohme Corp.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 State Docket Sheet)(JP) Modified on 9/25/2017 (RDO). (Entered: 09/22/2017) |
| 09/21/2017 | 2 | COMPLAINT against All Defendants with Jury Demand filed by All Plaintiffs. Filed in State Court on 8/18/17.(JP) (Entered: 09/22/2017) |
| 09/22/2017 | 3 | NOTICE to counsel of Local Rule 2.01 for Carmen A. DeGisi (signed by deputy clerk). (JP) (Entered: 09/22/2017) |
| 09/25/2017 | 4 | **RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2. The Notice of Pendency of Other Actions shall be filed within fourteen (14) days from the date of this Order. Signed by Judge Paul G. Byron on 9/25/2017. (GNB) copies mailed/e-mailed** (Entered: 09/25/2017) |
| 09/25/2017 | 5 | **INTERESTED PERSONS ORDER. The Certificate of Interested Persons shall be filed within fourteen (14) days from the date of this Order. Signed by Judge Paul G. Byron on 9/25/2017. (GNB) copies e-mailed** (Entered: 09/25/2017) |
| 09/28/2017 | 6 | MOTION to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3)(Gerecke, Edward) (Entered: 09/28/2017) |
| 10/10/2017 | 7 | NOTICE of pendency of related cases re 4 Related case order and track 2 notice per Local Rule 1.04(d) by Merck & Co., Inc., Merck Sharp & Dohme Corp.. Related case(s): No. (Gerecke, Edward) (Entered: 10/10/2017) |
| 10/10/2017 | 8 | CERTIFICATE of interested persons and corporate disclosure statement re 5 Interested |

| | | persons order by Merck & Co., Inc., Merck Sharp & Dohme Corp. identifying Corporate Parent Merck & Co., Inc. for Merck Sharp & Dohme Corp... (Gerecke, Edward) (Entered: 10/10/2017) |
|---|---|---|
| 10/12/2017 | 9 | UNOPPOSED MOTION to extend time until 11/10/17 to respond to Complaint by McKesson Corp.. (Preston, Brett) Motions referred to Magistrate Judge Gregory J. Kelly. Modified on 10/13/2017 (RDO). (Entered: 10/12/2017) |
| 10/12/2017 | 10 | CERTIFICATE of interested persons and corporate disclosure statement re 5 Interested Persons Order by McKesson Corp.. (Preston, Brett) Modified on 10/13/2017 (RDO). (Entered: 10/12/2017) |
| 10/13/2017 | 11 | **ENDORSED ORDER granting 9 Defendant McKesson Corporation's Unopposed Motion for Enlargement of Time to Respond to Plaintiffs' Complaint. McKesson Corporation's answer or response to 2 Plaintiffs' Complaint is due on November 13, 2017. Signed by Magistrate Judge Gregory J. Kelly on 10/13/2017. (DWG)** (Entered: 10/13/2017) |
| 10/26/2017 | 12 | NOTICE of Appearance by Carmen A. DeGisi on behalf of Rebecca Bell, Robert Erickson, Vernon Purdham (DeGisi, Carmen) (Entered: 10/26/2017) |
| 10/26/2017 | 13 | NOTICE of pendency of related cases re 4 order per Local Rule 1.04(d) by Rebecca Bell, Robert Erickson, Vernon Purdham. Related case(s): no (DeGisi, Carmen) Modified on 10/27/2017 (JP). (Entered: 10/26/2017) |
| 10/26/2017 | 14 | CERTIFICATE of interested persons and corporate disclosure statement re 5 order by Rebecca Bell, Robert Erickson, Vernon Purdham. (DeGisi, Carmen) Modified on 10/27/2017 (JP). (Entered: 10/26/2017) |
| 10/26/2017 | 15 | Unopposed MOTION to Appear Telephonically *at Case Management Conference* by Rebecca Bell, Robert Erickson, Vernon Purdham. (Attachments: # 1 Text of Proposed Order)(DeGisi, Carmen) Motions referred to Magistrate Judge Gregory J. Kelly. (Entered: 10/26/2017) |
| 10/27/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Dino Sangiamo, appearing on behalf of Merck & Co., Inc., Merck Sharp & Dohme Corp. (Filing fee $150 receipt number ORL68121.). (JP) (Entered: 10/27/2017) |
| 10/27/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Christopher Conoscenti, appearing on behalf of Merck & Co., Inc., Merck Sharp & Dohme Corp. (Filing fee $150 receipt number ORL68120.). (JP) (Entered: 10/27/2017) |
| 10/30/2017 | 16 | (MOTION for to appear pro hac vice) Written designation and consent to act by Edward W. Gerecke on behalf of Merck & Co., Inc., Merck Sharp & Dohme Corp.. Local Counsel: Edward W. Gerecke. Non-Resident Counsel: Christopher Conoscenti. (Gerecke, Edward) Modified on 11/6/2017 (MAA). (Entered: 10/30/2017) |
| 10/30/2017 | 17 | (MOTION for to appear pro hac vice) Written designation and consent to act by Edward W. Gerecke on behalf of Merck & Co., Inc., Merck Sharp & Dohme Corp.. Local Counsel: Edward W. Gerecke. Non-Resident Counsel: Dino Sangiamo. (Gerecke, Edward) Modified on 11/6/2017 (MAA). (Entered: 10/30/2017) |
| 10/31/2017 | 18 | **ENDORSED ORDER granting 15 Plaintiffs' Unopposed Motion for Leave to Conduct Case Management Conference by Telephone, provided the parties agree on the essentials of the Case Management Report. Otherwise, the parties shall meet in person. Signed by Magistrate Judge Gregory J. Kelly on 10/31/2017. (MB)** (Entered: 10/31/2017) |

| 11/03/2017 | 19 | RESPONSE in Opposition re 6 MOTION to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law filed by Rebecca Bell, Robert Erickson, Vernon Purdham. (Attachments: # 1 Exhibit 1)(DeGisi, Carmen) Text modified on 11/6/2017 (RDO). (Entered: 11/03/2017) |
|---|---|---|
| 11/06/2017 | 20 | RESPONSE in Opposition re 6 MOTION to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law *CORRECTED FILING* filed by Rebecca Bell, Robert Erickson, Vernon Purdham. (Attachments: # 1 Exhibit 1)(DeGisi, Carmen) Text modified on 11/7/2017 (RDO). (Entered: 11/06/2017) |
| 11/07/2017 | 21 | **ORDER denying 16 motion to appear pro hac vice; denying 17 motion to appear pro hac vice. Signed by Magistrate Judge Gregory J. Kelly on 11/7/2017. (MB)** (Entered: 11/07/2017) |
| 11/07/2017 | 22 | Unopposed MOTION for Christopher Conoscenti to appear pro hac vice by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) Motions referred to Magistrate Judge Gregory J. Kelly. (Entered: 11/07/2017) |
| 11/07/2017 | 23 | Unopposed MOTION for Dino Sangiamo to appear pro hac vice by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) Motions referred to Magistrate Judge Gregory J. Kelly. (Entered: 11/07/2017) |
| 11/08/2017 | 24 | **ORDER granting 22 DEFENDANTS MERCK & CO., INC. AND MERCK SHARP & DOHME CORP.'S UNOPPOSED MOTION FOR CHRISTOPHER CONOSCENTI TO APPEAR PRO HAC VICE; granting 23 DEFENDANTS MERCK & CO., INC., AND MERCK SHARP & DOHME CORP.'S UNOPPOSED MOTION FOR DINO SANGIAMO TO APPEAR PRO HAC VICE, provided counsel shall register for and use the electronic filing system as adopted by the Court. Signed by Magistrate Judge Gregory J. Kelly on 11/8/2017. (MB)** (Entered: 11/08/2017) |
| 11/08/2017 | 25 | MOTION to Dismiss Complaint *and Incorporated Memorandum of Law* by McKesson Corp.. (Preston, Brett) (Entered: 11/08/2017) |
| 11/08/2017 | 26 | Unopposed MOTION for leave to file Reply re 20 Response in Opposition and in Support of 6 Motion to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law by Merck & Co., Inc., Merck Sharp & Dohme Corp. (Gerecke, Edward) Modified on 11/9/2017 (JET). (Entered: 11/08/2017) |
| 11/09/2017 | 27 | **ENDORSED ORDER granting 26 Motion for Leave to File Reply Supporting Motion to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law. Reply due 11/20/2017 and shall not exceed five (5) pages. Signed by Judge Paul G. Byron on 11/9/2017. (BAH)** (Entered: 11/09/2017) |
| 11/09/2017 | 28 | NOTICE of Appearance by Matthew F. Hall on behalf of McKesson Corp. (Hall, Matthew) (Entered: 11/09/2017) |
| 11/09/2017 | | Set/reset deadlines as to 6 MOTION to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law . Replies due by 11/20/2017. (JET) (Entered: 11/09/2017) |
| 11/15/2017 | 29 | CASE MANAGEMENT REPORT. (Gerecke, Edward) (Entered: 11/15/2017) |
| 11/16/2017 | 30 | **ORDER: This case is REFERRED to the assigned United States Magistrate Judge, for all further proceedings and the entry of judgment in accordance with 28 U.S.C. §** |

| | | |
|---|---|---|
| | | 636(c) and Fed.R.Civ.P. 73, with any appeal to be taken to the United States Court of Appeals. Signed by Judge Paul G. Byron on 11/16/2017. **(MMW)** (Entered: 11/16/2017) |
| 11/17/2017 | 31 | CONSENT to trial by U.S. Magistrate Judge by all parties re 29 Case Management Report. (RDO) (Entered: 11/17/2017) |
| 11/17/2017 | 32 | Case Reassigned to Magistrate Judge Gregory J. Kelly as presider. New case number: 6:17-cv-1672-ORL-GJK. (RDO) (Entered: 11/17/2017) |
| 11/20/2017 | 33 | **CASE MANAGEMENT AND SCHEDULING ORDER: Amended Pleadings due by 1/5/2018, Joinder of Parties due by 1/5/2018, Discovery due by 10/5/2018, Dispositive motions due by 10/25/2018, Pretrial statement due by 2/19/2019, All other motions due by 11/5/2018, Plaintiff disclosure of expert report due by 7/3/2018, Defendant disclosure of expert report due by 8/3/2018, Final Pretrial Conference set for 3/11/2019 at 10:00 AM in Orlando Courtroom 3 C before Magistrate Judge Gregory J. Kelly, Jury Trial set for 4/15/2019 at 10:00 AM in Orlando Courtroom 3 C before Magistrate Judge Gregory J. Kelly. Conduct mediation hearing by 11/1/2018. Lead counsel to coordinate dates. Signed by Magistrate Judge Gregory J. Kelly on 11/20/2017. (MB)** Modified on 11/21/2017 (RMF). (Entered: 11/20/2017) |
| 11/20/2017 | 34 | Unopposed MOTION to Sever *and Transfer Plaintiffs Erickson and Bell* by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) (Entered: 11/20/2017) |
| 11/20/2017 | 35 | REPLY to Response to Motion re 6 MOTION to Dismiss Plaintiffs' Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud and Incorporated Memorandum of Law filed by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) (Entered: 11/20/2017) |
| 11/20/2017 | | reset scheduling order deadlines: Final Pretrial Conference set for 3/11/2019 at 10:00 AM in Orlando Courtroom 3 C before Magistrate Judge Gregory J. Kelly (RMF) (Entered: 11/21/2017) |
| 11/20/2017 | 36 | CASE REFERRED to Mediation, Steven Sawicki appointed as Mediator. (RMF) (Entered: 11/21/2017) |
| 11/21/2017 | 37 | **ORDER granting 34 Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s Unopposed Motion to Sever and Transfer. The Clerk is directed to follow the instructions stated herein. Signed by Magistrate Judge Gregory J. Kelly on 11/21/2017. (DWG)** (Entered: 11/21/2017) |
| 11/22/2017 | 38 | Case transferred **as to plaintiff Robert Erickson only** to Ocala from Orlando Division on 11/22/2017, Case Number 6:17-cv-1672. Case assigned to District Judge Moody and Magistrate Judge Lammens. New Case Number: 5:17-cv-562-Oc-30PRL. (MAA) (Entered: 11/22/2017) |
| 11/22/2017 | 39 | RESPONSE in Opposition re 25 MOTION to Dismiss Complaint *and Incorporated Memorandum of Law* filed by Robert Erickson. (DeGisi, Carmen) (Entered: 11/22/2017) |
| 11/27/2017 | 40 | **ORDER: The Court hereby orders the parties to confer, and for Plaintiff's counsel to file a notice within ten (10) days stating whether the parties still agree to have the case referred to the Magistrate Judge. Signed by Judge James S. Moody, Jr. on 11/27/2017. (SMB)** (Entered: 11/27/2017) |
| 12/04/2017 | 41 | NOTICE re 40 Order *Regarding Magistrate Judge Referral* (DeGisi, Carmen) by Robert Erickson Modified on 12/5/2017 (HAQ). (Entered: 12/04/2017) |
| 12/06/2017 | 42 | **AMENDED CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 3/4/2019, Dispositive motions due by 4/1/2019, Pretrial Conference set for** |

| | | |
|---|---|---|
| | | **TUESDAY, NOVEMBER 5, 2019 at 9:30 AM in Tampa Courtroom 17 before Judge James S. Moody Jr., Jury Trial set for DECEMBER 2019 trial term in Tampa Courtroom 17 before Judge James S. Moody Jr. Signed by Judge James S. Moody, Jr. on 12/6/2017. (AD)** (Entered: 12/06/2017) |
| 12/07/2017 | | Set/reset scheduling order deadlines: Defendant disclosure of expert report due by 1/18/2019, Plaintiff disclosure of expert report due by 12/3/2018. (HAQ) (Entered: 12/07/2017) |
| 12/08/2017 | 43 | **ORDER: Defendants' Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s Motion to Dismiss (Doc. 6) is GRANTED. Defendant McKesson Corp.'s Motion to Dismiss (Doc. 25) is GRANTED. The Complaint (Doc. 2) is DISMISSED. Plaintiff may file an amended complaint within fourteen (14) days from the date of this Order, or else the case will be dismissed without prejudice without further notice. Signed by Judge James S. Moody, Jr. on 12/8/2017. (SMB)** (Entered: 12/08/2017) |
| 12/21/2017 | 44 | AMENDED COMPLAINT against All Defendants with Jury Demand filed by Robert Erickson. Related document: 2 Complaint filed by Robert Erickson.(DeGisi, Carmen) (Entered: 12/21/2017) |
| 12/29/2017 | 45 | MOTION for Extension of Time to File Answer re 44 Amended Complaint by McKesson Corp.. (Hall, Matthew) (Entered: 12/29/2017) |
| 01/02/2018 | 46 | SUPPLEMENT re 45 MOTION for Extension of Time to File Answer re 44 Amended Complaint *re: Rule 3.01(g) Certification* by McKesson Corp.. (Hall, Matthew) (Entered: 01/02/2018) |
| 01/02/2018 | 47 | **ENDORSED ORDER granting 45 Motion for Extension of Time to Answer or respond. McKesson Corp.'s answer or response is due 1/12/2018. Signed by Judge James S. Moody, Jr on 1/2/2018. (JH)** (Entered: 01/02/2018) |
| 01/03/2018 | 48 | Unopposed MOTION for Extension of Time to File Answer re 44 Amended Complaint by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) (Entered: 01/03/2018) |
| 01/03/2018 | 49 | **ENDORSED ORDER granting 48 Defendant Merck & Co. and Merck Sharp & Dohme Corp.'s Unopposed Motion for Extension of Time to Respond to the First Amended Complaint. Merck & Co., Inc. answer or response due 1/12/2018; Merck Sharp & Dohme Corp. answer or response due 1/12/2018. Signed by Judge James S. Moody, Jr. on 1/3/2018. (SMB)** (Entered: 01/03/2018) |
| 01/11/2018 | 50 | MOTION to Dismiss Amended Complaint *and Incorporated Memorandum of Law* by McKesson Corp.. (Preston, Brett) (Entered: 01/11/2018) |
| 01/12/2018 | 51 | MOTION to Dismiss Plaintiff's Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud, and Incorporated Memorandum of Law by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) (Entered: 01/12/2018) |
| 01/25/2018 | 52 | MEMORANDUM in opposition re 50 Motion to dismiss filed by Robert Erickson. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(DeGisi, Carmen) (Entered: 01/25/2018) |
| 01/26/2018 | 53 | RESPONSE in Opposition re 51 MOTION to Dismiss Plaintiff's Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud, and Incorporated Memorandum of Law filed by Robert Erickson. (DeGisi, Carmen) (Entered: 01/26/2018) |
| 01/30/2018 | 54 | Unopposed MOTION for leave to file to File Reply Supporting Their Motion to Dismiss Plaintiff's Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and |

| | | |
|---|---|---|
| | | Consumer Fraud by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Walz, David) (Entered: 01/30/2018) |
| 01/30/2018 | 55 | **ENDORSED ORDER granting 54 Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s Unopposed Motion for Leave to File Reply. The above-referenced Defendants may file a five-page reply within 10 days from the date of this Order. Signed by Judge James S. Moody, Jr on 1/30/2018. (JH)** (Entered: 01/30/2018) |
| 02/08/2018 | 56 | Unopposed MOTION for leave to file Reply Supporting Motion to Dismiss by McKesson Corp.. (Preston, Brett) (Entered: 02/08/2018) |
| 02/08/2018 | 57 | **ENDORSED ORDER granting 56 Defendant McKesson Corporation's Unopposed Motion for Leave to File Reply Supporting Its Motion to Dismiss. Defendant McKesson Corporation may file a 5-page reply, with a 6-page attachment, within 10 days from the date of this Order. Signed by Judge James S. Moody, Jr on 2/8/2018. (JH)** (Entered: 02/08/2018) |
| 02/09/2018 | 58 | DEFENDANT'S BRIEF re 57 Order on Motion for Leave to File, 52 Memorandum in opposition filed by McKesson Corp.. (Attachments: # 1 Exhibit)(Preston, Brett) (Entered: 02/09/2018) |
| 02/09/2018 | 59 | REPLY to Response to Motion re 51 MOTION to Dismiss Plaintiff's Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Consumer Fraud, and Incorporated Memorandum of Law filed by Merck & Co., Inc., Merck Sharp & Dohme Corp. (Gerecke, Edward) Modified on 2/12/2018 (HAQ). (Entered: 02/09/2018) |
| 02/20/2018 | 60 | NOTICE of Appearance by Carolina Yvonne Blanco on behalf of McKesson Corp. (Blanco, Carolina) (Entered: 02/20/2018) |
| 02/22/2018 | 61 | **ORDER: Defendant McKesson Corp.'s Motion to Dismiss 50 is GRANTED. Defendants' Merck & Co., Inc. and Merck Sharp & Dohme Corp.'s Motion to Dismiss 51 is GRANTED IN PART. The Amended Complaint 44 is DISMISSED WITHOUT PREJUDICE. Plaintiff may file an amended complaint within fourteen (14) days from the date of this Order. Failure to do so will result in this case being dismissed without prejudice without further notice. Signed by Judge James S. Moody, Jr. on 2/22/2018. (SMB)** (Entered: 02/22/2018) |
| 03/08/2018 | 62 | CERTIFICATE of interested persons and corporate disclosure statement by Robert Erickson. (DeGisi, Carmen) (Entered: 03/08/2018) |
| 03/08/2018 | 63 | NOTICE of pendency of related cases per Local Rule 1.04(d) by McKesson Corp.. Related case(s): YES (Preston, Brett) (Entered: 03/08/2018) |
| 03/08/2018 | 64 | SECOND AMENDED COMPLAINT against All Defendants with Jury Demand. filed by Robert Erickson. Related document: 44 Amended Complaint filed by Robert Erickson. (DeGisi, Carmen) Modified on 3/9/2018 (LAB). (Entered: 03/08/2018) |
| 03/16/2018 | 65 | Unopposed MOTION to extend time to 03/30/2018 *to Respond to First Amended Complaint* by McKesson Corp.. (Preston, Brett) (Entered: 03/16/2018) |
| 03/19/2018 | 66 | **ENDORSED ORDER granting 65 Defendant McKesson Corp.'s Motion to extend time to respond to Second Amended Complaint. Defendant McKesson Corp.'s response is due by March 30, 2018. Signed by Judge James S. Moody, Jr on 3/19/2018. (JH)** (Entered: 03/19/2018) |
| 03/20/2018 | | Set/reset deadlines as to McKesson Corp.'s Response to second amended complaint due by 3/30/2018. (LAB) (Entered: 03/20/2018) |
| 03/20/2018 | 67 | Unopposed MOTION for Extension of Time to File Answer re 64 Amended Complaint by |

| | | Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Gerecke, Edward) (Entered: 03/20/2018) |
|---|---|---|
| 03/20/2018 | 68 | **ENDORSED ORDER granting 67 Unopposed Motion for Extension of Time to Respond to Second Amended Complaint. Answer or response by Merck & Co., Inc. and Merck Sharp & Dohme Corp. due 3/30/2018. Signed by Judge James S. Moody, Jr. on 3/20/2018. (SMB)** (Entered: 03/20/2018) |
| 03/29/2018 | 69 | MOTION to Dismiss Second Amended Complaint *and Incorporated Memorandum of Law* by McKesson Corp.. (Preston, Brett) Modified on 3/29/2018 (HAQ). (Entered: 03/29/2018) |
| 03/30/2018 | 70 | MOTION to Dismiss Plaintiff's Second Amended Complaint by Merck & Co., Inc., Merck Sharp & Dohme Corp.. (Attachments: # 1 Exhibit 1)(Gerecke, Edward) (Entered: 03/30/2018) |
| 04/12/2018 | 71 | RESPONSE in Opposition re 69 MOTION to Dismiss First Amended Complaint *and Incorporated Memorandum of Law* filed by Robert Erickson. (DeGisi, Carmen) (Entered: 04/12/2018) |
| 04/16/2018 | 72 | **ORDER TO SHOW CAUSE as to Robert Erickson. The Plaintiff shall file a response to Defendants Merck & Co., Inc.'s and Merck Sharp & Dohme Corp.'s Motion to Dismiss 70 within fourteen (14) days of the date of this Order or shall SHOW CAUSE in writing within fourteen (14) days of this Order why the Court should not consider said Motion without a response by Plaintiff. Signed by Judge James S. Moody, Jr. on 4/16/2018. (SMB)** (Entered: 04/16/2018) |
| 04/16/2018 | 73 | RESPONSE in Opposition re 70 MOTION to Dismiss Plaintiff's Second Amended Complaint filed by Robert Erickson. (DeGisi, Carmen) (Entered: 04/16/2018) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/20/2018 15:05:47 | | |
| **PACER Login:** | norfolkrs27:5369791:4298842 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:17-cv-00562-JSM-PRL |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| **ROBERT ERICKSON**, | DOCKET NO.: 5:17-CV-00562-JSM-PRL |
| Plaintiff, | CIVIL ACTION |
| v. | **SECOND AMENDED COMPLAINT** |
| **MERCK & CO., INC**.;<br>**MERCK SHARP & DOHME CORP**.; and<br>**McKESSON CORP**.,<br>Defendants. | |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Plaintiff, ROBERT ERICKSON, by and through his attorneys, MARC J. BERN & PARTNERS LLP, complain and allege against Defendants MERCK & CO., INC.; MERCK SHARP & DOHME CORP.; and McKESSON CORP.; and each of them (collectively, "Defendants"), as follows:

**INTRODUCTION**

1.      Plaintiff bring this action for personal injuries and damages suffered as a direct and proximate result of being inoculated with the unreasonably dangerous and clinically ineffective vaccine, ZOSTAVAX, intended for the prevention of shingles as manufactured by Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp., and distributed by Defendant McKesson Corp.

2.      The subject of the present matter is the ZOSTAVAX vaccine, intended for the prevention of herpes zoster; the shingles virus. At all times relevant to this action, Defendants

1

developed, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, processed, sold, distributed and/or marketed the ZOSTAVAX vaccine to be administered to patients throughout the United States, including Florida, and including ROBERT ERICKSON.

3.      Plaintiff's claims for damages relate to Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the faulty ZOSTAVAX vaccine.

4.      The Defendants' vaccine that is the subject of this action reached and was administered to Plaintiff, by and through his physicians, medical facilities and pharmacies without substantial change in condition from the time they left Defendants' possession.

5.      Plaintiff, his physicians, and his pharmacist used the ZOSTAVAX vaccine in the manner in which it was intended.

6.      Defendants are solely responsible for any alleged design, manufacture or information defect the ZOSTAVAX vaccine may contain.

## PARTIES

8.      Plaintiff, ROBERT ERICKSON, at all times relevant to this action was and is a citizen of the State of Florida, residing in 1503 E. Crooked Lk. Dr., Eustis, Florida 32726.

9.      ROBERT ERICKSON was inoculated with Defendants' ZOSTAVAX vaccine on or about July 3, 2007, administered by David Fernandez at Lakeside Internal Medicine, located in Taveras, Florida 32778, as recommended for routine adult health maintenance and for the prevention of shingles.

10.     The vaccine did not prevent shingles as intended, and ROBERT ERICKSON in fact subsequently contracted herpes zoster.

11.     On or about May 21, 2016, ROBERT ERICKSON was treated by Timothy John Cheslock, D.O., at Florida Hospital Waterman Way – Emergency Department, Tavares, FL 32778, for the onset of a vesicular rash accompanied by weakened immune symptoms, which was diagnosed as herpes zoster, or shingles.

12.     ROBERT ERICKSON has been prescribed Percocet, Tramadol, and Acyclovir for management of his painful symptoms.

13.     As a direct and proximate result of these malfunctions, Plaintiff ROBERT ERICKSON suffered painful injuries and damages, and required extensive medical care and treatment.  As a further proximate result, Plaintiff ROBERT ERICKSON has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

14.     At all relevant times to this action, as further detailed herein, Defendants MERCK & CO., INC.; MERCK SHARP & DOHME CORP.; and McKESSON CORP. were engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce and into the State of Florida, either directly or indirectly through third parties or related entities, the ZOSTAVAX vaccine, which was to be administered to patients throughout the United States, including Florida.

15.     Defendant Merck & Co., Inc. ("Merck"), is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033.  At all times relevant to this action, Merck researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and sold the ZOSTAVAX vaccine to be administered to patients throughout the United States, including

Florida. Merck has conducted business and derived substantial revenue from within the State of Florida, from including, but not limited to, its business activities related to the ZOSTAVAX vaccine. Merck had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct in Florida directly relates to Plaintiff's claim in this action. Plaintiff's claim arises out of Merck's contacts with the State of Florida.

16.     Defendant Merck Sharp & Dohme Corp. ("MSD"), is a wholly-owned subsidiary of Merck and part of the Merck family of companies. MSD is a corporation organized and existing under the laws of the State of New Jersey with its headquarters located at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033. At all times relevant to this action, through the actions of its parent, Merck, or, based on information and belief, its own actions, MSD developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the ZOSTAVAX vaccine to be administered to patients throughout the United States, including Florida. MSD had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct in Florida directly relates to Plaintiff's claim in this action. Plaintiff's claim arises out of MSD's contacts with the State of Florida. MSD is foreign corporation registered to conduct business in Florida and can be served via its registered agent CT Corporation System, 1200 S. Pine Island Road, Plantation, Florida 33324.

17.     Defendant McKesson Corp. (hereinafter "McKesson") is a Delaware Corporation with its principal place of business at 2710 Gateway Oaks Drive, Sacramento, California 95833.

At all relevant times, McKesson was in the business of manufacturing, labeling, selling, marketing, packaging, re-packaging, and distributing the ZOSTAVAX vaccine, on information and belief, the ZOSTAVAX vaccine administered to the Plaintiff. McKesson does business throughout the United States and in the State of Florida, and regularly, continuously, and presently does business with this State, including manufacturing, marketing, selling and distributing the ZOSTAVAX vaccine. McKesson had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct in Florida directly relates to Plaintiff's claim in this action. Plaintiff's claim arises out of McKesson's contacts with the State of Florida.  McKesson is foreign corporation registered to conduct business in Florida and can be served via its registered agent The Prentice Hall Corporation System, Inc., 1201 Hays Street, Suite 105, Tallahassee, Florida 32301.

18.     Affiliates have provided Merck with support in the development and distribution of the ZOSTAVAX vaccine. McKesson acts as such affiliate and does regularly, and continuously conduct business throughout the State of Florida.

19.     Based upon information and belief, Merck, either directly or through its agents, including McKesson, and servants and employees, does business in Florida, and at all times relevant hereto, has sold and distributed the ZOSTAVAX vaccine in Florida.

**<u>JURISDICTION AND VENUE</u>**

20.     This is an action for damages in express of $75,000, excluding interest, costs, and attorneys' fees.

21.     This Court has personal jurisdiction over all parties because complete diversity exists, and the damages claimed exceed $75,000.

22.     This Court has personal jurisdiction over each Defendant pursuant to Florida's long-arm statute, which subjects each Defendant to jurisdiction in Florida that personally or through an agent: commits a tortious act within this state; or causes injury to persons or property within this state arising out of an act or omission by the defendant outside of this state, if, at or about the time of the injury, either: the defendant was engaged in solicitation or service activities within this state; or products, materials, or things processed serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of commerce, trade, or use. *See* Fla. Stat. § 48.193, *et seq*.

23.     Requiring each Defendant to litigate Plaintiff's claims in Florida does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

24.     Defendants, and each of them, expected or should have expected that their acts would have consequences within the United States, and specifically in Florida.

25.     Merck, MSD, and McKesson, each of them, advertised the ZOSTAVAX vaccine to patients, doctors and hospitals in Florida and/or other medical facilities located throughout the state of Florida.

26.     Merck, MSD, and McKesson, each of them, focused special attention and allocated special budgeting to the marketing of ZOSTAVAX in Florida because of the State's expansive population of elder residents in the target age demographic for the vaccine.

**ALTER-EGO LIABILITY, VICARIOUS AND SUCCESSOR LIABILITY, AND PIERCING THE CORPORATE VEIL AS A RESULT OF THE RELATIONSHIPS BETWEEN MERCK, MSD, AND McKESSON**

27.     At all relevant times herein, Merck, MSD, and McKesson were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were all times operating

6

and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing their collective conduct constituted a breach of duty owed to Plaintiff.

28.     At all relevant times, Merck, MSD, and McKesson, and each of them, were engaged in the business of, or were successors in interest to, entities in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling the ZOSTAVAX vaccine for use by consumers, including Plaintiff, his health care providers, and pharmacists.  As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiff for his damages.

29.     Plaintiff, would not have an adequate remedy if Merck, MSD, and McKesson were not named parties in this action.

30.     A unity of interest in ownership between Merck and MSD exists or existed at all relevant times, such that any individuality and separateness between Merck and MSD has ceased and Merck and MSD are alter-egos of the other.  Adherence to the fiction of the separate existence of Merck and MSD as entities distinct from each other will permit an abuse of corporate privilege and would sanction a fraud and/or promote injustice.

31.     Sufficient grounds exist to disregard the corporate form and extend liability to MSD and Merck for the other's acts through piercing the corporate veil.

32.     At all relevant times, the officers and/or directors of Merck and MSD mentioned or referred to herein participated in, authorized and/or directed the production and promotion of the aforementioned ZOSTAVAX vaccine when they knew, or with exercise of reasonable care and

diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that results in the injuries suffered by Plaintiff.

33.     MSD and Merck exercised, and continues to exercise, complete and domination of the finances, policy, and business practices regarding the ZOSTAVAX vaccine of McKesson to such an extent that McKesson has no separate minds, wills or existences of its own.

34.     The aforesaid control was used by Merck and/or MSD to negligently research, design, formulate, compound, test, manufacture, produce, process, assemble, inspect, distribute, market, label, promote, package, prescribe, and/or advertise, and sell ZOSTAVAX vaccine for use by patients like Plaintiff, and Plaintiff's health care providers and pharmacists.

35.     McKesson exercised, and continues to exercise, complete control, and/or equal participation in the policy and business practices of Merck and/or MSD regarding the production, promotion, packaging, advertising, distribution, and selling of the ZOSTAVAX vaccine to such an extent that Merck, MSD, and McKesson have no separate mind, will or own existence in this regard.

36.     McKesson used its aforesaid control over Merck and MSD, acting as an agent of Merck, to research, process, assemble, inspect, distribute, market, label, promote, package, advertise, and/or sell the ZOSTAVAX vaccine for use by consumers like Plaintiff, her health care providers, and her pharmacists.

37.     McKesson, individually and as Merck's agent, developed and implemented the marketing strategy to promote and sell and distribute the ZOSTAVAX vaccine nationwide, including in Florida.

38.     McKesson developed the "Vaccine Information Statement" for the ZOSTAVAX vaccine with Merck, and published and disseminated the ZOSTAVAX "Vaccine Information Statement" nationwide, including in Florida.

39.     Merck and/or MSD impliedly and explicitly consented to have McKesson act on Merck and/or MSD's behalf with regard to the creation, implementation, marketing, distribution, and wide dissemination of the marketing materials for the ZOSTAVAX vaccine and the product itself nationwide, including in Florida.

40.     Merck and MSD manifested McKesson's authority to act on their behalf by allowing McKesson to create, develop, and implement the marketing strategy and campaign for the ZOSTAVAX vaccine.

41.     Merck and MSD manifested McKesson's authority to act on their behalf by allowing McKesson to develop, publish, and disseminate the "Vaccine Information Statement" for the ZOSTAVAX vaccine, and/or to develop, publish, and disseminate marketing and promotional materials for the ZOSTAVAX vaccine.

42.     McKesson, Merck, and MSD are liable for all acts and omissions made by each other because of their alter-ego, business partner, or agency relationship.

43.     "Merck" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, organizational units of any kind, predecessors-in-interest including but not limited to Schering-Plough Corporation, successors, assigns, officers, directors, employees, agents and representatives of Merck, MSD, and each of them.

44.     "MSD" where used hereinafter, shall include and refer to all predecessor(s)-in-interest including but not limited to Schering Plough Corporation, successor(s)-in-interest, assigns,

officers, directors, employees, agents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and/or representatives of MSD.

45.     "Defendants" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, predecessors, successors, assigns, officers, directors, employees, agents and representatives of Merck, MSD, McKesson, collectively.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

46.     Plaintiff is within the applicable statute of limitations for his claims because Plaintiff, and his healthcare professionals, did not discover, and could not reasonably discover, the defects and unreasonably dangerous condition of the ZOSTAVAX vaccine.

47.     Plaintiff's ignorance of the defective and unreasonably dangerous nature of the ZOSTAVAX vaccine and the causal connection between these defects and each Plaintiff's injuries and damages, is due in large part to Defendants' acts and omissions in fraudulently concealing information from the public and misrepresenting and/or downplaying the serious threat to public safety its products present.

48.     In addition, Defendants are estopped from relying on any statutes of limitation or repose by virtue of unclean hands, acts of fraudulent concealment, affirmative misrepresentations and omissions.

49.     Such conduct includes intentional concealment from Plaintiff, prescribing healthcare professionals, pharmacists, and the general consuming public and the FDA of material information that ZOSTAVAX had not been demonstrated to be safe or effective, and carried with them the risks and dangerous defects described herein.

50.     Defendants had a duty to disclose the fact that the ZOSTAVAX vaccine was not safe or effective, was defective, unreasonably dangerous, and that being inoculated with the

ZOSTAVAX vaccine as a measure of routine health maintenance and prevention carried the above-described risks.

<u>**COUNT I:**</u><br><u>**NEGLIGENCE:**</u>

51.     Herpes zoster, or shingles, is caused by the varicella zoster virus (VZV).  The incidence and severity of shingles increases as people age.

52.     Shingles results from reactivation of latent varicella zoster virus (VZV), which is the virus that causes chickenpox.

53.     The ZOSTAVAX vaccine was designed, developed, marketed, and sold with the intended purpose of long-term prevention of shingles.

54.     At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine, and, through that conduct, have knowingly and intentionally placed the ZOSTAVAX vaccine into the stream of commerce with full knowledge that they reach consumers such as Plaintiff who would become administered the vaccine.

55.     Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

56.     MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

57.     McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

58.     Merck had a duty to exercise reasonable care in the design, research, manufacture, testing, supply, packaging, and sale of ZOSTAVAX including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

59.     MSD had a duty to exercise reasonable care in the design, research, manufacture, testing, supply, packaging, and sale of ZOSTAVAX including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

60.     McKesson had a duty to exercise reasonable care in the design, marketing, testing, advertisement, supply, promotion, sale, and distribution of ZOSTAVAX including the duty to take all reasonable steps necessary to distribute and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

61.     Merck and MSD failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck and MSD knew, or should have known, that the product caused viral infection, and was therefore not safe for administration to consumers.

62.     Merck, MSD, and McKesson failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck, MSD, and McKesson knew, or should have known, that the product was not effective for its intended use: the long-term prevention of shingles.

63.     Merck, MSD, and McKesson failed to exercise due care in the labeling of ZOSTAVAX and failed to issue to consumers and/or their healthcare providers adequate

12

warnings as to the risk of serious bodily injury, including viral infection, resulting from its use. Merck, MSD, and McKesson failed to exercise due care in the labeling of ZOSTAVAX and failed to issue to consumers and/or their healthcare providers adequate warnings as to the risk of serious bodily injury, including viral infection, resulting from its use.

64.     Merck and MSD continued to manufacture and market the ZOSTAVAX vaccine despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers. This is especially true given its tenuous efficacy.

65.     McKesson continued to label, package, market, promote, distribute, and sell the ZOSTAVAX vaccine without adequate instructions or warnings despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers. This is especially true given its tenuous efficacy.

66.     Defendants, each of them, knew, or should have known, that consumers, such as the Plaintiff, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

67.     The ZOSTAVAX vaccine contains live VZV. The virulence of the virus is reduced or "attenuated." Attenuated vaccines are designed to activate the immune system with the decreased risk of actually developing the disease, which was known to Defendants.

68.     The ZOSTAVAX vaccine is developed from a live-attenuated version of the Oka/Merck VZV vaccine strain.

69.     A risk of using a live-attenuated virus vaccine is that it is not weakened enough or "under- attenuated".

70.     Under-attenuated live virus creates an increased risk of developing the disease the vaccine was to prevent.

71. Under-attenuated live VZV has been shown to reactivate.[1]

72. Once injected, attenuated live virus vaccines have been shown to recombine into more virulent strains causing disease.

73. Shingles is a reactivation of the latent VZV, that afflicts in nearly 1 million cases annually in the United States, at an occurrence of three to seven times higher incidence in geriatric patients.

74. In May of 2006, the U.S. Food and Drug Administration ("FDA") approved the ZOSTAVAX vaccine to be marketed and sold in the United States by Merck.

75. ZOSTAVAX was initially indicated for the "the prevention of herpes zoster (shingles) in individuals 60 years of age and older when administered as a single-dose."[2]

76. FDA approval of the ZOSTAVAX vaccine was based in large part on the results of the Shingles Prevention Study ("SPS") supported by Merck and/or MSD.

77. The results of the SPS were published in the *New England Journal of Medicine* on June 2, 2005. The paper was titled "A Vaccine to Prevent Herpes Zoster and Post-herpetic Neuralgia in Older Adults". *N. Engl. J. Med.* 2005; 352(22):2271-84.

78. The SPS results stated that "[t]he pain and discomfort associated with herpes zoster can be prolonged and disabling, diminishing the patient's quality of life and ability to function to a degree comparable to that in diseases such as congestive heart failure, myocardial infarction, diabetes mellitus type 2, and major depression." *N. Engl. J.Med.* 2005; 352(22) at 2272.

---

[1] Leggiadro, R. J. (2000). "Varicella Vaccination: Evidence for Frequent Reactivation of the Vaccine Strain in Healthy Children." *The Pediatric Infectious Disease Journal*, 19(11), 1117–1118; Krause, P. R., & Klinman, D. M. (2000). *Nature Medicine*, 6(4), 451–454.
[2] FDA Approval Letter, May 25, 2006.

79.     The SPS results stated that "[t]he greater number of early cases of herpes zoster in the placebo group, as compared with the vaccine group, and the fact that no vaccine virus DNA was detected, indicate that the vaccine did not cause or induce herpes zoster."

80.     The approval granted by the FDA to allow the selling and marketing of this vaccine came with certain post-marketing commitments that Merck and/or MSD agreed to complete, among other things, to insure the safety of the ZOSTAVAX vaccine.   These included the following:

> a.  A randomized, placebo-controlled safety study to assess the rates of serious adverse events in 6,000 people receiving the vaccine as compared to 6,000 who receive a placebo.
>
> b.  An observational study using a health maintenance organization ("HMO") and 20,000 vaccinated people to address safety issues in the course of clinical practice. This study is specifically to detect "potential safety signals following administration of ZOSTAVAX." This study was to be submitted to the FDA by December 2008.

81.     Since ZOSTAVAX's introduction in 2006, Vaccine Adverse Event Reports ("VAERS") appeared in significant numbers addressing various adverse effects.

82.     Documented adverse reactions to vaccines must be reported to the federal government in a compulsory and mandated database, the Vaccine Adverse Event Reporting System ("VAERS"). As of September 2015, VAERS received 1,111 submissions of serious adverse event reports regarding the ZOSTAVAX vaccine, which included reports of herpes zoster.

83.     Despite having knowledge of this information, and that correlation exists between being administered the ZOSTAVAX vaccine and developing a viral infection leading to the development of shingles or varicella-zoster related injuries within a relatively short period of time, Defendants failed to provide this information both to patients and the medical providers prescribing the vaccine.

84.     Plaintiff was influenced by, affected by, or otherwise caused to use and consent to being inoculated with the Defendants' ZOSTAVAX vaccine as a result of virtually uniform and/or identical information provided, as well as representations and material omissions made by Defendants Merck, Merck Sharp & Dohme, and McKesson, as set forth herein.  This information emanated from the same source, Merck, and was vetted by its copy review department (or equivalent) to ensure uniformity and harmony of the marketing message.  The manner by which such information and representations were received by or otherwise exposed to Plaintiff and his healthcare providers and pharmacies was the same and include, but are not limited to, the following:

a.  Merck and MSD's ZOSTAVAX vaccine applications submitted to and relied by the FDA for clearance to commercially market.

b.  Product information, instructions for use and other labeling materials provided with the ZOSTAVAX vaccine by Merck, MSD, and McKesson.

c.  Marketing and promotional materials made available and provided by each Defendants' marketing departments to Plaintiff's health care providers, including, but not limited to:

    i.  Patient brochures provided by Merck, MSD, and McKesson's sales representatives in person,

    ii.  Training seminars hosted by Merck, MSD, and McKesson,

    iii.  Continuing Medical Education ("CME") materials created, authored and/or provided by Merck, MSD, and McKesson.

    iv.  Information supplied at Professional Conferences at booths hosted or manned by Merck, MSD, and McKesson and/or their Key Opinion Leaders.

d.  Representations and informational packets made and provided by Merck, MSD, and McKesson's marketing and sales departments through their sales representatives to each implanting physician of Plaintiff's during in-office visits or meetings with said physicians and by pharmacists at the places where they go regularly to obtain other medications.

e.  Merck, MSD, and McKesson's online websites that provided the same specific information on the ZOSTAVAX vaccine, including product description, indications for use, instructions for use, and ordering information.

f.  The indications for use were the same or substantially similar in each Plaintiff's situation, as set forth herein.  The Plaintiff were each urged by their health care

proviers or pharmacists to get inoculated with the ZOSTAVAX vaccine for the prevention of adult shingles, which they were informed by said providers was a dangerous condition.

g.   Plaintiff experienced injuries because of the same defects with the ZOSTAVAX, which were known or knowable to Merck, MSD, and McKesson, at all relevant times, but negligently, recklessly, and intentionally withheld from Plaintiff and their health care providers, as set forth herein.

85.   At all relevant times, the ZOSTAVAX vaccine's patient information sheet, its label, and its prescribing information did not adequately address the risk of viral infection or possible diseases of the nervous system associated with the use of the product.

86.   The ZOSTAVAX vaccine's patient information sheet only addressed the concern that a rash and itching might develop at the injection site.

87.   The ZOSTAVAX vaccine's patient information sheet failed to notify its readers that shingles was a noted occurrence during the product's clinical trials.

88.   When Plaintiff was inoculated with ZOSTAVAX in 2007, the patient information sheet, label, and prescribing information distributed with the ZOSTAVAX vaccine lacked an adequate and conspicuous reference to the potential risk of viral infection.

89.   The prescribing information for ZOSTAVAX contains a warning that "[t]ransmission of vaccine virus may occur between vaccines and susceptible contacts."

90.   The risk of transmission of vaccine virus is due to active viral infection in individuals receiving the ZOSTAVAX vaccine.

91.   Reasonably prudent manufacturers, distributors, suppliers, and/or sellers would not have placed the ZOSTAVAX vaccine in the stream of commerce with knowledge of its inherent, hidden, and unreasonably dangerous risks.

92.   Reasonably prudent manufacturers, distributors, suppliers, and/or sellers would not have placed the ZOSTAVAX vaccine in the stream of commerce without adequate warnings or disclosures of its inherent, hidden, and unreasonably dangerous risks.

17

93.     Merck and MSD failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck and MSD knew, or should have known, that the ZOSTAVAX vaccine carried the serious risk of causing viral infection and was therefore not unreasonably dangerous to its consumers.

94.     Merck, MSD, and McKesson failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck, MSD, and McKesson knew, or should have known, that the ZOSTAVAX vaccine was not effective for long-term prevention of shingles in adults over 60 years of age.

95.     Merck, MSD, and McKesson failed to issue to consumers and/or their healthcare providers adequate warnings or disclosures, through labels or other means, regarding the risks of serious bodily injury, including viral infection, resulting from use of the ZOSTAVAX vaccine. Merck, MSD, and McKesson's failure was a breach of their duty of reasonable care.

96.     Merck, MSD, and McKesson failed to issue to consumers and/or their healthcare providers adequate warnings or disclosures, through labels or other means, regarding the actual efficacy of the ZOSTAVAX vaccine and the actual risks and benefits of the product. Merck, MSD, and McKesson's failure was a breach of their duty of reasonable care.

97.     The ZOSTAVAX vaccine, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Merck, MSD, and McKesson was unreasonably and inherently dangerous due the risks associated with its use, was more dangerous than expected by the ordinary consumer, and those dangers were not known or obvious to any

other party except Defendants (each of them). Merck, MSD, and McKesson breached their duty of reasonable care by selling the unreasonably dangerous ZOSTAVAX vaccine.

98.     Merck and MSD continued to manufacture, market, and sell the ZOSTAVAX vaccine despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers.

99.     Merck and MSD continued to manufacture, market, and sell the ZOSTAVAX vaccine despite the knowledge that its efficacy waned significantly over time, and was effectively worthless after seven years post-inoculation.

100.    McKesson continued to label, package, market, promote, distribute, and sell the ZOSTAVAX vaccine without adequate instructions or warnings despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers.

101.    McKesson continued to label, package, market, promote, distribute, and sell the ZOSTAVAX vaccine without adequate instructions or warnings despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX was not effective for its intended purpose: long-term prevention of shingles.

102.    Merck, MSD, and McKesson breached their duty of reasonable care by continuing to sell the unreasonably dangerous ZOSTAVAX vaccine without adequate disclosures despite having actual or constructive knowledge of its associated risks and lack of efficacy.

103.    Merck, MSD, and McKesson had a continuing duty to warn consumers of the ZOSTAVAX vaccine, including the Plaintiff, of the dangers associated with the product, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of the product, each Defendant breached its duty.

19

104. Plaintiff ROBERT ERICKSON suffered from shingles, its painful and persistent physical injuries and damages, and other serious injuries despite being inoculated with the ZOSTAVAX vaccine.

105. Plaintiff ROBERT ERICKSON suffered from shingles, its painful and persistent physical injuries and damages, and other serious injuries as a direct and proximate result of being inoculated with the ZOSTAVAX vaccine.

106. As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiff suffered severe and permanent personal injuries, including significant conscious pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and injury.

107. As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiff suffered, is suffering, and/or will continue to suffer from mental and emotional distress due to resulting physical limitations and seriousness of her physical condition.

108. As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiff incurred and will incur medical expenses and other economic harm.

109. As a direct and proximate consequence of Defendants' negligence and failure to exercise due care, Plaintiff sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

### COUNT II:
### STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

110. The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

111.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine, and, through that conduct, have knowingly and intentionally placed the ZOSTAVAX vaccine into the stream of commerce with full knowledge that they reach consumers such as Plaintiff who would be administered the vaccine.

112.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

113.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

114.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

115.    Merck and MSD continued to manufacture and market its product despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers.

116.    Merck and MSD continued to manufacture and market its product despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX was not effective for its intended use as long-term prevention against shingles.

117.    ZOSTAVAX's efficacy four years after vaccination is zero.

118.    ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

119.    ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

120.    Merck knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

121.    ROBERT ERICKSON contracted shingles in 2016, at a time when his ZOSTSVAX vaccine was equivalent to having zero efficacy, and he was informed and relied upon Defendants' information that he was protected from such condition.

122.    The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

123.    Merck, as a leading manufacturer of pharmaceutical products, knew or should have known of a safer alternative vaccine for shingles prevention, in the form of a non-live or inactivated vaccine strain that carries no change of inducing the condition it was intended to prevent.

124.    Merck had knowledge of a non-live vaccine in 2007, at the time when Plaintiff was administered the ZOSTAVAX vaccine. Merck was owner of the patent of a non-live alternative, but let the non-live vaccine patent laps, and chose rather to continue utilizing the recycled Oka vaccine strain (as already used in Merck's pre-existing "Varivax" vaccine, amplified by fourteen-times in strength for zoster prevention).

125.    Merck and McKesson knew or should have known that there were widely-publicized and economically feasible methods to "de-activate" the ZOSTAVAX vaccine strain, for example using heat or gamma-radiation, to eliminate the possibility of re-activating the virus upon being inoculated, as occurred in Plaintiff.

126.    It was reasonably foreseeable that consumers of the ZOSTAVAX vaccine, including Plaintiff ROBERT ERICKSON, would contract the vaccine-strain of herpes zoster, after being inoculated with the defective vaccine, which is the very condition the shot was designed to prevent intended to prevent this condition.

22

127.     An alternative design of the ZOSTAVAX vaccine, such as an inactivated, non-live, or protein-based vaccine, would have proven lasting efficacy and would have eliminated the possibility of inducing shingles, and thus would have prevented the injury suffered by Plaintiff.

128.     Merck knew, or should have known, that consumers, such as the Plaintiff, would foreseeably suffer injury as a result of Merck's failure to exercise ordinary care in their design of ZOSTAVAX.

129.     McKesson knew, or should have known, that consumers, such as Plaintiff, to whom they distributed the defective ZOSTAVAX vaccine, would suffer serious injury, including severe shingles outbreaks, due to their failure to exercise ordinary care in the vaccine they distributed.

130.     As a direct and proximate consequence of Merck, MSD and McKessons's negligence, Plaintiff sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## COUNT III:
## STRICT PRODUCTS LIABILITY: FAILURE TO WARN

131.     Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

132.     MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

133.     McKesson researched, developed, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine, individually and as an agent of Merck and MSD.

134.     The ZOSTAVAX vaccine was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product with no substantial change in the

condition in which the product was designed, produced, and manufactured by Merck and MSD and sold, distributed, labeled, and marketed by Merck, MSD, and McKesson.

135.    The ZOSTAVAX vaccine was manufactured, designed, marketed, labeled and sold in a defective condition, for use by the Plaintiff's physicians and/or healthcare providers and all other consumers of the product, making the product unreasonably dangerous.

136.    Merck and MSD researched, developed, designed, tested, manufactured, and inspected the ZOSTAVAX vaccine and Merck, MSD, and McKesson labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the ZOSTAVAX vaccine and in the course of same.

137.    Merck, MSD, and McKesson directly advertised or marketed the ZOSTAVAX vaccine to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the product.

138.    The ZOSTAVAX vaccine, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, and distributed by Merck and MSD and sold, distributed, labeled, and marketed by Merck, MSD, and McKesson was defective due to the product's inadequate warnings and instructions.

139.    Merck, MSD, and McKesson knew, or should have known, and adequately warned that the ZOSTAVAX vaccine created a risk of serious and dangerous side effects, including but not limited to, viral infection, resulting in shingles, post-herpetic neuralgia, or other diseases of the nervous system.

140.    Merck, MSD, and McKesson knew, or should have known, and adequately warned that the ZOSTAVAX vaccine was not effective for the long-term prevention of shingles, and was completely ineffective for that purpose after four years post-inoculation.

24

141.    The product was under the exclusive control of Merck, MSD, and McKesson and was unaccompanied by appropriate and adequate warnings regarding the risk of severe and permanent injuries associated with its use, including, but not limited to, the risk of developing a disease in the nervous system due to viral infection. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer.

142.    Notwithstanding Merck, MSD, and McKesson's knowledge of the defective condition of the ZOSTAVAX vaccine, Merck, MSD, and McKesson failed to adequately warn the medical community and consumers of the product, including the Plaintiff and their healthcare providers, of the dangers and risk of harm associated with the use and administration of its ZOSTAVAX vaccine.

143.    If the Plaintiff was equipped with the knowledge of the defective condition and potential harms of the ZOSTAVAX vaccine, he would not have purchased it and agreed to have it injected into his body.

144.    The product was defective when it left the possession of Merck, MSD, and McKesson in that it contained insufficient warnings to alert the Plaintiff and/or their healthcare providers to the dangerous risks and reactions associated with it, including possible viral infection of the nervous system or another disease of the nervous system.

145.    Merck, MSD and McKesson are strictly liable to Plaintiff for their failure to relay the serious risks of the ZOSTSVAX vaccine, including the risk of re-activation of a resistant strain of herpes zoster, as was suffered by Plaintiff.

146.    Merck, MSD and McKesson are strictly liable to Plaintiff for their failure to relay the material facts about the efficacy of the ZOSTSVAX vaccine, including it was not effective for

the long-term prevention of shingles and was completely ineffective after four years post-inoculation.

147.    In 2007, at the time that ROBERT ERICKSON was inoculated with ZOSTAVAX, the label contained no warning of the risk of inducing the shingles virus, which was a side effect known to Defendants at that time.

148.    The risk of inducing shingles, the very condition ZOSTAVAX was intended to prevent, was a risk that was not obvious to a lay consumer of the vaccine or a prescriber following the indications of the label. While the risk of inducing shingles was a side-effect that was reasonably foreseeable to Defendants, it was not obvious to a consumer, such as Plaintiff, in a way such that Defendants were absolved the need to disclose and warn of such risk on the labeling and instructions of ZOSTAVAX.

149.    When Plaintiff was vaccinated with ZOSTAVAX, as administered by David Fernandez at Lakeside Internal Medicine in 2007, the vaccine was administered and used as intended, and did not include any contraindications or forewarning that the live vaccine could re-activate a serious strain of the herpes zoster virus.

150.    In 2007, at the time that ROBERT ERICKSON was inoculated with ZOSTAVAX, the label contained no warning or disclosure that the vaccine was ineffective after four years and was not effective for the long-term prevention of shingles.

151.    ZOSTAVAX's rapidly waning efficacy is obvious to a lay consumer of the vaccine or a prescriber following the indications of the label.

152.    Merck, MSD, and McKesson had a duty to warn consumers of foreseeable risks associated with ZOSTAVAX, and further carried a continued duty to warn of risks that became known to them after the vaccine was administered to Plaintiff.

153.    In 2014, Merck changed the warning label to include the risk of inducing shingles, which was a side-effect long known to defendants. Plaintiff contracted a serious strain of herpes zoster in 2016.

154.    In the time between the ZOSTAVAX label was changed to include the risk of shingles and the time that Plaintiff was injured, Merck, MSD, and McKesson made no effort to notify or otherwise warn Plaintiff of the known risk, which was information that would not have been otherwise known or accessible to a consumer, such as Plaintiff, who was already vaccinated.

155.    Merck, MSD, and McKesson failed to warn Plaintiff of the risk upon inoculation in 2007, and further failed to uphold their continued duty notify Plaintiff when the risk of shingles became known to them which was at latest in 2014.

156.    At the time that Plaintiff was vaccinated in 2007, the label of ZOSTAVAX included no warning or indication that the vaccine would lessen drastically in efficacy with time. The CDC later published that it was known that the ZOSTAVAX vaccine wanes in efficacy over five years.

157.    Even when such knowledge of efficacy was known to Merck, MSD, and McKesson and confirmed by the CDC, Merck, MSD, and McKesson did not warn pre-existing consumers, including Plaintiff, of the known risk of decreased efficacy, and the increased likelihood of contracting herpes zoster.

158.    Plaintiff ROBERT ERICKSON and his healthcare professionals, including David Fernandez, relied upon the information supplemented by Merck, MSD, and McKesson that ZOSTAVAX was a safe and effective was to prevent shingles, when in fact it was not.

159.    Even though Merck, MSD, and McKesson knew or should have known of the risks and reactions associated with their product, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

160.     Regulation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.S. 301 to 399 ("FDCA") requires labels to be revised as soon as there is reasonable evidence of an association of a serious hazard with a drug; thus, a causal relationship need not be proved when revisions to warning labels have been made.

161.     Since May 25, 2006, Merck has requested and received approval on thirteen separate occasions to amend, supplement, revise and otherwise change the warning labels, package insert, efficacy data, intended use, and method of production of ZOSTAVAX. Each regulatory action required by or petitioned to the FDA is sufficient to overcome the rebuttable presumption that the warning labels of ZOSTAVAX are and were adequate. These label changes occurred during the period of time between Plaintiff's vaccination in 2007 and when he was injured in 2016.

162.     Defendants Merck, MSD, and McKesson were equally aware, and should have known of the decreased efficacy and exceptional risk of inducing shingles, and did not warn or otherwise try to notify Plaintiff.

163.     Plaintiff used the ZOSTAVAX vaccine as intended or in a reasonably foreseeable manner.

164.     Plaintiff was never informed of the risk of contracting persistent and chronic shingles, the very condition the vaccine was intended to prevent.

165.     Plaintiff was not able to easily identify or treat his injury, because he remained under the false pretense that he was protected from contracting the herpes zoster virus.  Given the knowledge of such risk,

166.     Plaintiff would not have voluntarily become inoculated with ZOSTAVAX.

167.      Plaintiff further would have been able to quickly treat his condition and potentially lessen his injuries if he was made aware that he was vulnerable to the herpes zoster virus.

168.    Merck, as a manufacturer of pharmaceutical products, is held to the level of knowledge of an expert in the field. Merck had knowledge of the dangerous risks and side effects of the ZOSTAVAX vaccine.

169.    MSD, as a manufacturer of pharmaceutical products, is held to the level of knowledge of an expert in the field. MSD had knowledge of the dangerous risks and side effects of the ZOSTAVAX vaccine.

170.    McKesson, as a leading marketer and distributer of pharmaceutical products, is held to the level of knowledge of an expert in the field. Merck had knowledge of the dangerous risks and side effects of the ZOSTAVAX vaccine.

171.    Plaintiff did not have the same knowledge as Merck, MSD, and McKesson, and no adequate warning was communicated to his physicians and/or healthcare providers.

172.    Although Merck, MSD, and McKesson knew, or should have known, of the defective nature of its ZOSTAVAX vaccine, they continued to design, manufacture, market, and sell its product without providing adequate warnings and instructions regarding ZOSTAVAX.

173.    As a direct and proximate result of Merck, MSD, and McKesson's failure to adequately warn described herein, Plaintiff was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life.

174.    Merck, MSD, and McKesson's failure to warn extended beyond the product's label and into other media available to Merck, including but not limited to advertisements, person-to-person sales calls, medical journal articles, and medical conference presentations.

175.    McKesson's failure to warn also extended beyond the product's label and into other media available to them, including but not limited to advertisements, person-to-person sales calls,

medical journal articles, and medical conference presentations, which were conducted by McKesson as agent of Merck.

176.    Upon information and belief, the ZOSTAVAX vaccine as manufactured and designed by Merck and MSD, and supplied, distributed, and marketed by Merck, MSD, and McKesson, was further defective due to inadequate post-market warnings or instructions because after Merck, MSD, and McKesson knew, or should have known, of the risk of serious bodily harm from the administration of its ZOSTAVAX vaccine, including, but not limited to, possible viral infection, each failed to provide adequate warnings to consumers and/or their healthcare providers about the product.

177.    The ZOSTAVAX vaccine, upon information and belief, as manufactured by Merck and MSD, and supplied by Merck, MSD, and McKesson, was defective due to inadequate post-market warnings or instructions when it left Merck, MSD, and McKesson's control.

178.    As a direct and proximate result of ZOSTAVAX's defective condition due to inadequate warnings, the Plaintiff used of the defective product and suffered serious physical injuries and incurred substantial medical costs and expenses, including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical bills and other expenses, and other losses and damages.

## COUNT IV:
## BREACH OF EXPRESS WARRANTY

179.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

180.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

181.   MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

182.   McKesson researched, developed, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine, individually and as an agent of Merck and MSD.

183.   Merck, MSD, and McKesson, through their officers, directors, agents, representatives, and through written literature and packaging, and written and media advertisements, expressly warranted that its ZOSTAVAX vaccine was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, viral infection, and was adequately tested and fit for its intended use.

184.   Merck warrantied that "…the vaccine did not cause or induce herpes zoster."

185.   MSD warrantied that "…the vaccine did not cause or induce herpes zoster."

186.   Additionally, Merck, MSD, and McKesson, each of them, through their officers, directors, agents, representatives, and through written literature and packaging, and written and media advertisements, represented that:

    a.   That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it.

    b.   That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies.

    c.   That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults.

    d.   That ZOSTAVAX was a "well-studied vaccine."

    e.   That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

f. That ZOSTAVAX would benefit its users "in the *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

g. That the efficacy of ZOSTAVAX is 51% for everyone.

h. That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

i. That the immunity provided by ZOSTAVAX was unlimited.

j. That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

k. That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

l. That ZOSTAVAX was safe.

m. That ZOSTAVAX was effective.

187.    The ZOSTAVAX vaccine did not conform to the representations made by Merck and MSD because it could and did induce shingles.

188.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because it caused serious injury, including diseases of the nervous system and/or viral infection, to consumers such as the Plaintiff, when used in routinely administered dosages.

189.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because it was not effective for the long-term prevention of shingles – it was not effective at all after four years.

190.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because its efficacy was not the same for all of its users – its peak efficacy rate of 51% was only in users that are 60 years of age.

191.    At the time of making such express warranties, Merck and MSD knew that the ZOSTAVAX vaccine could induce herpes zoster.

32

192.     At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew and/or should have known that the ZOSTAVAX vaccine did not conform to the express warranties and representations:

193.     At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine was associated with numerous serious side effects, including the possibility of viral infection.

194.     At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine waned in efficacy – to effectively zero – after four years post-inoculation.

195.     At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine was only 51% effective at its peak, if the user was inoculated at age 60.

196.     Merck, MSD, and McKesson breached each of their express warranties.

197.     Plaintiff, through Plaintiff's physicians and/or other healthcare providers, did rely on the express warranties made by Merck, MSD, and McKesson regarding the safety and efficacy of the ZOSTAVAX vaccine in purchasing, administering, and using the product.

198.     Members of the medical community, including physicians and other healthcare professionals, relied upon each Defendants' representations and express warranties in connection with the use recommendation, description, and dispensing of the ZOSTAVAX vaccine.

199.     As a foreseeable, direct, and proximate result of the breach of the express warranties by Merck, MSD, and McKesson, the Plaintiff contracted herpes zoster, resulting in the Plaintiff suffering serious physical injuries including, but not limited to, mental anguish, physical pain and

suffering, diminished capacity for the enjoyment of life, diminished quality of life, and incurred medical bills and other expenses, and other losses and damages.

## COUNT V:
## BREACH OF IMPLIED WARRANTY

200.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

201.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine

202.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

203.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

204.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

### Merck

205.    At all times relevant to this action, Merck manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold the ZOSTAVAX vaccine for use in preventing shingles.

206.    Merck knew of the intended use of the ZOSTAVAX vaccine at the time Merck marketed, sold, and distributed its product for use by the Plaintiff's physicians and healthcare

34

providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

207.   Merck impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, his physicians, and his healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

208.   Merck's representations and implied warranties were false, misleading, and inaccurate because the ZOSTAVAX vaccine was defective, and not of merchantable quality.

209.   At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by Merck, Merck knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

210.   Plaintiff, his physicians, and his healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of Merck, as manufacturer, developer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

211.   Contrary to Merck's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiff, was not of merchantable quality and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein.

212.   Merck breached its implied warranty because the ZOSTAVAX vaccine was not safely fit for its intended use and purpose.

35

213.    Merck placed the ZOSTAVAX vaccine into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiff without substantial change in the condition in which it was manufactured and sold.

**MSD**

214.    MSD knew of the intended use of the ZOSTAVAX vaccine at the time MSD designed, manufactured, marketed, sold, and distributed the ZOSTAVAX vaccine for use by the Plaintiff, her physicians, and her healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

215.    MSD impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, his physicians, and his healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

216.    MSD's representations and implied warranties were false, misleading, and inaccurate because its product was defective, and not of merchantable quality.

217.    At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by MSD, MSD knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

218.    Plaintiff, his physicians, and his healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of MSD, as manufacturer, developer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

219.    Contrary to MSD's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiff, was not of merchantable quality and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein.

220.    MSD breached its implied warranty because the ZOSTAVAX vaccine was not safely fit for its intended use and purpose.

221.    MSD placed the ZOSTAVAX vaccine into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiff without substantial change in the condition in which it was manufactured and sold.

## McKesson

222.    McKesson knew of the intended use of the ZOSTAVAX vaccine at the time McKesson marketed, sold, and distributed the ZOSTAVAX vaccine for use by the Plaintiff's physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

223.    McKesson impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, her physicians, and her healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

224.    McKesson's representations and implied warranties were false, misleading, and inaccurate because the ZOSTAVAX vaccine was defective, and not of merchantable quality.

225.    At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by McKesson, McKesson knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

226.     Plaintiff, his physicians, and his healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of McKesson, as marketer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

227.     Contrary to McKesson's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiff, was not of merchantable quality and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein.

228.     McKesson breached its implied warranty because the ZOSTAVAX vaccine was not safely fit for its intended use and purpose.

229.     McKesson placed the ZOSTAVAX vaccine into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiff without substantial change in the condition in which it was manufactured and sold.

230.     As a foreseeable, direct and proximate result of McKesson's acts and omissions and Plaintiff's use of the ZOSTAVAX vaccine, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for his injuries described herein.

## COUNT VI:
## FRAUDULENT MISREPRESENTATION

231.     The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

232.     At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing,

38

manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine

233.　Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

234.　MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

235.　McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

236.　Merck, by and through its agents and employees will be added following discovery, intentionally, willfully, and knowingly, fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiff and his healthcare providers, that its ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective.

## Merck

237.　Merck represented to the medical community, the FDA, and consumers, including the Plaintiff and her health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective for its intended use for the long-term prevention of shingles.

238.　Merck knew or believed at the time it made its representations that its misrepresentations were false regarding the efficacy of ZOSTAVAX and the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

239.    Merck made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, such as Plaintiff.

240.    Merck's misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia to consumers over the age of 59;  longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did not induce serious side effects (such as shingles, post-herpetic neuralgia, retinal necrosis, keratitis and acute myelitis).

241.    Merck's employee Melissa Lore disseminated information available on the labeling of ZOSTAVAX vaccine as it was administered to Plaintiff. The labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiff. McKesson also disseminated this misleading information in its patient information materials, brochures, and marketing materials.

242.    Merck's website includes information about ZOSTAVAX and states that the ZOSTAVAX vaccine prevents the reactivation of the zoster virus and effectively prevent shingles.

243.    David Gutsch, M.D., is currently the Executive Director, Vaccines Regulatory, for Merck and MSD.

244.    In 2005, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

40

245.     In 2006, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

246.     In 2007, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

247.     In 2008, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

248.     In 2009, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

249.     David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during his presentations.

250.     David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX did not cause shingles during his presentations.

251.     David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who

interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

252.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

253.    Ann Redfield, M.S.N., R.N. formally known as Ann R. Sweet, M.S.N., R.N., upon information and belief, worked in a key capacity on Merck's Clinical Safety and Risk Management Department as part of the "vaccine team" at Merck West Point, located in West Point, Pennsylvania. Ann Redfield acted at all times pertinent hereto within the scope of her employment as proprietor of key safety and prescribing information for the ZOSTAVAX vaccine, at issue.

254.    Ann Redfield, MSN, RN, working with part of the "vaccine team" as part of Merck's Clinical Safety and Risk Management Department, wrote the comment section for Merck's WAES adverse experience reports. Ann Redfield, MSN, RN, also worked as the "process owner" of Merck's Varicella Zoster Vaccine Identification Program. In this capacity, Redfield drafted documents presented to the Merck employees who interacted directly with healthcare providers who recommend, prescribe, and dispense the ZOSTAVAX vaccine.

255.    Ann Redfield, MSN, RN, gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck, MSD, and McKesson employees who interacted directly with healthcare providers including Plaintiff's physicians and pharmacists.

256.    Ann Redfield, MSN, RN, excluded or otherwise purposely ignored reports of meningitis caused by vaccine-strain herpes zoster and assisted Merck in communicating this false information to ZOSTAVAX sales representatives, and then to healthcare providers.

257.     In May 2006, Mark Feinberg, M.D., Ph.D., was the vice president of policy, public health and medical affairs of Merck Vaccines.  In May 2006, Mark Feinberg, M.D., Ph.D., stated that shingles is an "often painful disease in older adults."

258.     Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, Merck represented the following material information to the public:

   a.  That adult shingles causes pain in almost every instance.

   b.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it.

   c.  That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles.

   d.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

   e.  That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults.

   f.  That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

   g.  That ZOSTAVAX was a "well-studied vaccine."

   h.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

   i.  That ZOSTAVAX would benefit its users "in the ***prevention of long-term nerve pain from shingles*** (post-herpetic neuralgia) can be ***primarily attributed to the vaccine's effect on the prevention of shingles***." (emphasis added).

   j.  That the efficacy of ZOSTAVAX is 51% for everyone.

   k.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

   l.  That the immunity provided by ZOSTAVAX was unlimited.

   m.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

   n.  That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

43

o.  That ZOSTAVAX was safe.

p.  That ZOSTAVAX was effective.

259.  Merck made the aforesaid statements (alleged in paragraph 258) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

260.  Merck made the aforesaid statements (alleged in paragraph 258) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read in 2006.

261.  Merck made the aforesaid statements (alleged in paragraph 258) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the American Journal of Health-System Pharmacy in 2006.  Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

262.  Merck made the aforesaid statements (alleged in paragraph 258) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the Journal of the American Geriatrics Association in 2007. Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

263. Merck made the aforesaid statements (alleged in paragraph 258) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the medical journal American Family Physician in 2007. Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

264. Merck made the aforesaid statements (alleged in paragraph 258) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read from 2006 until 2017.

265. Merck made the aforesaid statements (alleged in paragraph 258) to the public, including directly to consumers, and the medical community through the May 26, 2006 video news release for the ZOSTAVAX vaccine.

266. The May 26, 2006 video news release for the ZOSTAVAX vaccine was disseminated through broadcast television, cable television, national newspapers such as the New York Times, Washington Post, USA Today, and other national media outlets.

267. Merck provided the May 26, 2006 video news release for the ZOSTAVAX vaccine electronically via email and fax to broadcast television; cable television; national newspapers including the New York Times; Washington Post; USA Today; to BusinessWire, a press release distributor, which distributed these representations to national media outlets; and other national media outlets.

45

268.     In May 2006, Merck made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.  The broadcast media then disseminated Merck's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community.

269.     In June 2006, Merck made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.  The broadcast media then disseminated Merck's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community.

270.     Merck's representations intentionally concealed the following material information:

271.     From 2006 until present date, Merck intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

272.     From 2006 until present date, Merck intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

273.     From 2006 until present date, Merck intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

274.     From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, Merck knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

275.    On June 13, 2006, Jill Bradley was Merck's Director of Marketing Communications.

276.    On June 13, 2006, Nancy Chamberlin, Pharm. D., Regulatory Review Officer, APLB, submitted a memorandum to Jill Bradley, Merck's Director of Marketing Communications, regarding the APLB's label review of ZOSTAVAX and stating APLB's position regarding the ZOSTAVAX label:

> "We disagree with your proposal to omit the warning for vaccination with a live attenuated virus and precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals. Omission of these would make your promotional pieces lacking in appropriate fair balance risk information that needs to be conveyed with every promotional material."

277.    On June 13, 2006, Jill Bradley decided, on behalf of Merck and in the scope of her employment with Merck, to intentionally omit the aforesaid warnings associated with the vaccination of a live attenuated virus for the 2006 ZOSTAVAX label.

278.    On June 13, 2006, when Merck decided to omit information on the 2006 ZOSTAVAX vaccine's label, Jill Bradley knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including each Plaintiff's healthcare providers, and by Plaintiff.

279.    On or about June 13, 2006, Merck knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the cardiac events; the warnings and precautions of using a live virus vaccine; and the need to avoid close contact (including household contacts) with someone who may be pregnant and has not had chickenpox or been vaccinated against chickenpox, or someone who has problems with their immune system.

280.    On or about June 13, 2006, Merck knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus

47

and also lacked a precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals.

281.    From June 13, 2006, Merck intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

282.    Merck knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

283.    From 2006 until 2014, Merck represented to the public, including directly to consumers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

284.    Since 2006, Merck represented to the medical community, to the public, and directly to consumers that known adverse effects associated with ZOSTAVAX use were no more serious that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

285.    On November 3, 2009, Dr. Rose Tiernan from the OVRR DVRPA called Merck employee Dr. David Gutsch to notify Merck that the term "rash" was goo general to be useful. Merck failed to remedy this inadequate warning.

286.    On or about February 13, 2009, Katherine E. Coll, a clinical research specialist for Merck's Vaccine and Biologics clinical research, circulated an email with the concern that adverse events [regarding ZOSTAVAX] has been entered into the post-market database that were after the protocol-specified follow-up period of 42 days, and sought to discovery whether those adverse events could be deleted. In this email it was discussed that doing so would be "extremely important for …the large efficacy study in subjects 50 to 59 years of age….It will also impacts [sic] all

ZOSTAVAX studies." Coll expressed concern that adverse reports had been entered after 42 days, and should be escalated to the process owner so that they may authorize deleting any adverse events 42 days post-vaccination, citing "The reason for the team's concern is that this cause caused problems in the past. AE's ("adverse events") included in the P004 (the Zostavax Efficacy Study – Shingles Prevention Study) database which were reported after the protocol-specified time period of 42 days resulted in considerable issues when the original Zostavax BLA (biologics license) was submitted to the agency.

287.    On or about February 19, 2009, Janie Parino, M.D., a Merck vaccine researcher, raised the issue of deleting adverse incident reports regarding ZOSTAVAX that occurred greater than 42 days after vaccination. On or about February 19, 2009, the email concern was answered by Pam Masciotti, Senior Data Management Special, who affirmed that it would be possible to follow the prior mandate to record all adverse event data for the [ZOSTAVAX] vaccine, but to "simply eliminate those that are out of window from the analysis."

288.    Email exchanges dating from 2009 from Merck's vaccine researches and data scientists indicates that Merck and MSD had knowledge of adverse events that occurred 42 days after being vaccinated with ZOSTAVAX, but knowingly and purposefully concealed it, and thus concealed the warnings that such adverse events may present themselves in patients already vaccinated.

289.    On October 2008, Dr. M. Levin, acting on behalf of Merck, presented at the Annual ICAAC/IDSA Annual Meeting in Washington, DC, and represented that "protection [from shingles] persists for up to 7 years."

290.    On October 23, 2010, Dr. M. Levin, acting on behalf of Merck, presented at the 48th Annual ICAAC/IDSA 46th Annual Meeting in Washington, DC, and represented that "protection [from shingles] persists for up to 7 years."

291.    On May 18, 2011, Merck represented that "The effect of time since vaccination on VE [vaccine efficacy] (waning effect) is not statistically significant" in a presentation regarding the "Persistence of Zoster Vaccine Efficacy" at the Society of Clinical Trials ("SCT") Annual Meeting in Vancouver, BC Canada.

292.    Medical professionals in academia, government, and private practice attended this SCT Annual Meetings, including medical care providers in the United States.

293.    Merck's representations that "the effect of time since vaccination on [ZOSTAVAX's] vaccine efficacy is not statistically significant" are false.

294.    Merck's representations that ZOSTAVAX's protection from shingles persists for up to seven years are false.

295.    ZOSTAVAX's efficacy four years after vaccination is zero.

296.    ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

297.    ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

298.    Merck knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

299.    The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

300.    From 2006 until 2017, Merck's professional representatives met physicians throughout the United States in person, including Plaintiff's healthcare providers and the

administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

301.    Merck's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

302.    From 2006 until 2017, Merck held convention panels that were attended by physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

303.    During these convention panels, Merck represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

304.    ZOSTAVAX vaccine's print advertisements showing graphic photos of a rash associated with shingles represented to their viewers and/or readers that shingles always causes pain in every patient.

305.    Shingles is not always accompanied by pain.

306.    ZOSTAVAX was not approved to treat pain.

307.    Shingles is not always accompanied by painful blisters or blistering rash.

308.    ZOSTAVAX vaccine's print advertisements' representations regarding pain occurrence with shingles were false and misleading.

309.    Viewers and consumers who saw, heard, or read the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly effective.

310.    Viewers and consumers who saw, heard, or read the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements relied upon the advertisements' representation that ZOSTAVAX was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

311.    The ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements concealed from their viewers, listeners, and readers that ZOSTAVAX vaccine can cause the reactivation of the chickenpox virus and cause shingles.

312.    Merck knew that the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements' representations were false and misleading.

313.    Merck had sole access to material facts concerning the ZOSTAVAX vaccine and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

314.    Merck knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

315.    Merck knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

316.    Merck's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine.

317.    Merck's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.

318.     Merck's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus.

319.     Merck's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine.

320.     Merck intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

321.     Merck intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon Merck's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

322.     Merck intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff to rely upon Merck's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

323.     Merck intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon Merck's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

324.    In 2017, Patrick Bergstedt, head of global marketing for Merck, admitted that Merck decided to promote ZOSTAVAX using "scare tactics" to increase the rate of ZOSTAVAX vaccination in adults and consumers.

325.    At the time Merck made these misrepresentations, and at the times that the Plaintiff were administered the ZOSTAVAX vaccine, Plaintiff, Plaintiff's physicians and/or pharmacists, and the medical community were unaware of the representations' falsehoods, and reasonably believed them to be true.

326.    At the time Merck concealed and intentionally omitted these material facts, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff's physicians and/or pharmacists, and the medical community were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

327.    Merck knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

328.    Merck knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

329.    Merck knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

330.    Merck knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

331.    Merck knew and had reason to know that Plaintiff, Plaintiff's physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the

ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

332.    Plaintiff would not have purchased and used the ZOSTAVAX vaccine if Plaintiff knew the true facts regarding its safety and efficacy.

333.    Plaintiff's physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

334.    Plaintiff reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

335.    Because Plaintiff reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

336.    Plaintiff's physicians reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiff for the long-term prevention of shingles and pain.

337.    Because Plaintiff's physicians reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

338.    Merck's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

339.    Merck's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiff.

340.    As a foreseeable, direct, and proximate result of Merck's intentional false representations, omissions, and concealment of material facts, Plaintiff suffered the serious injuries alleged herein.

341.    As a direct and proximate consequence of Merck's fraudulent misrepresentations, omissions, and concealment of material fact, Plaintiff sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

## **MSD**

342.    MSD, by and through its agents and employees and/or its predecessors(s)-in-interest, represented to the medical community, the FDA, and consumers, including the Plaintiff and Plaintiff's health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective for its intended use for the long-term prevention of shingles.

343.    MSD knew or believed at the time it made its representations that its misrepresentations were false and fraudulent regarding the efficacy of ZOSTAVAX and the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

344.    MSD made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, such as Plaintiff.

345.    MSD's fraudulent misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia to consumers over the age of 59;  longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did *not* induce serious side effects (such as shingles, post-herpetic neuralgia, retinal necrosis, keratitis and acute myelitis).

346.    MSD disseminated information available on the labeling of ZOSTAVAX, as it was administered to Plaintiff. The ZOSTAVAX labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiff.

347.    David Gutsch, M.D., is currently the Executive Director, Vaccines Regulatory, for Merck and MSD.

348.    In 2005, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

349.    In 2006, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

350.    In 2007, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

351.    In 2008, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

352.    In 2009, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

353.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during his presentations.

354.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX did <u>not</u> cause shingles during his presentations.

355.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

356.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who

interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

357.    Ann Redfield, M.S.N., R.N. formally known as Ann R. Sweet, M.S.N., R.N., upon information and belief, worked in a key capacity on MSD's Clinical Safety and Risk Management Department as part of the "vaccine team" at Merck West Point, located in West Point, Pennsylvania. Ann Redfield acted at all times pertinent hereto within the scope of her employment as proprietor of key safety and prescribing information for the ZOSTAVAX vaccine, at issue.

358.    Ann Redfield, MSN, RN, working with part of the "vaccine team" as part of MSD's Clinical Safety and Risk Management Department, wrote the comment section for Merck's WAES adverse experience reports. Ann Redfield, MSN, RN, also worked as the "process owner" of MSD's Varicella Zoster Vaccine Identification Program. In this capacity, Redfield drafted documents presented to the MSD employees who interacted directly with healthcare providers who recommend, prescribe, and dispense the ZOSTAVAX vaccine.

359.    Ann Redfield, MSN, RN, gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers.

360.    Ann Redfield, MSN, RN excluded or otherwise purposely ignored reports of meningitis caused by vaccine-strain herpes zoster and assisted MSD in communicating this false information to ZOSTAVAX sales representatives, and then to healthcare providers.

361.    Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, MSD represented the following material information to the public:

      a.    That adult shingles causes pain in almost every instance;

b. That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it;

c. That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles;

d. That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

e. That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults;

f. That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

g. That ZOSTAVAX was a "well-studied vaccine."

h. That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

i. That ZOSTAVAX would benefit its users "in the ***prevention of long-term nerve pain from shingles*** (post-herpetic neuralgia) ***can be primarily attributed to the vaccine's effect on the prevention of shingles***." (emphasis added).

j. That the efficacy of ZOSTAVAX is 51% for everyone.

k. That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

l. That the immunity provided by ZOSTAVAX was unlimited.

m. That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

n. That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

o. That ZOSTAVAX was safe.

p. That ZOSTAVAX was effective.

362. MSD made the aforesaid statements (alleged in paragraph 361) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

363. MSD made the aforesaid statements (alleged in paragraph 361) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals

that physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read in 2006.

364.    MSD made the aforesaid statements (alleged in paragraph 361) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the American Journal of Health-System Pharmacy in 2006.  Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

365.    MSD made the aforesaid statements (alleged in paragraph 361) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the Journal of the American Geriatrics Association in 2007. Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

366.    MSD made the aforesaid statements (alleged in paragraph 361) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the medical journal American Family Physician in 2007. Physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

367.    MSD made the aforesaid statements (alleged in paragraph 361) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals

that physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read from 2006 until 2017.

368.    MSD made the aforesaid statements (alleged in paragraph 361) to the public, including directly to consumers, and the medical community through the May 26, 2006 video news release for the ZOSTAVAX vaccine.

369.    The May 26, 2006 video news release for the ZOSTAVAX vaccine was disseminated through broadcast television, cable television, national newspapers such as the New York Times, Washington Post, USA Today, and other national media outlets.

370.    MSD provided the May 26, 2006 video news release for the ZOSTAVAX vaccine electronically via email and fax to broadcast television; cable television; national newspapers including the New York Times; Washington Post; USA Today; to BusinessWire, a press release distributor, which distributed these representations to national media outlets; and other national media outlets.

371.    In May 2006, MSD made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.  The broadcast media then disseminated MSD's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community.

372.    In June 2006, MSD made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.   The broadcast media then

disseminated MSD's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community.

373.   MSD's representations intentionally concealed the following material information:

    a.   From 2006 until present date, MSD intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

    b.   From 2006 until present date, MSD intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

    c.   From 2006 until present date, MSD intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

    d.   From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, MSD knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

374.   On June 13, 2006, Nancy Chamberlin, Pharm. D., Regulatory Review Officer, APLB, submitted a memorandum to Jill Bradley, Merck's Director of Marketing Communications, regarding the APLB's label review of ZOSTAVAX and stating APLB's position regarding Merck's ZOSTAVAX label:

> "We disagree with your proposal to omit the warning for vaccination with a live attenuated virus and precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals. Omission of these would make your promotional pieces lacking in appropriate fair balance risk information that needs to be conveyed with every promotional material."

375.   MSD knew about Nancy Chamberlin's memorandum and the contents therein.

376.   On June 13, 2006, Jill Bradley decided, on behalf of Merck and MSD and in the scope of her employment with Merck, to intentionally omit the aforesaid warnings associated with the vaccination of a live attenuated virus for the 2006 ZOSTAVAX label.

377.    On June 13, 2006, MSD decided to omit information on the 2006 ZOSTAVAX vaccine's label, MSD knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including each Plaintiff's healthcare providers, and by Plaintiff.

378.    On or about June 13, 2006, MSD knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the cardiac events; the warnings and precautions of using a live virus vaccine; and the need to avoid close contact (including household contacts) with someone who may be pregnant and has not had chickenpox or been vaccinated against chickenpox, or someone who has problems with their immune system.

379.    On or about June 13, 2006, MSD knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus and also lacked a precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals.

380.    From June 13, 2006, MSD intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

381.    MSD knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

382.    From 2006 until 2014, MSD represented to the public, including directly to consumers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

383.    Since 2006, MSD represented to the medical community, to the public, and directly to consumers that known adverse effects associated with ZOSTAVAX use were no more serious

that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

384.     On November 3, 2009, Dr. Rose Tiernan from the OVRR DVRPA called Merck employee Dr. David Gutsch to notify Merck and MSD that the term "rash" was too general to be useful. MSD failed to remedy this inadequate warning.

385.     MSD's representations that "the effect of time since vaccination on [ZOSTAVAX's] vaccine efficacy is not statistically significant are false.

386.     MSD's representations that ZOSTAVAX's protection from shingles persists for up to seven years are false.

387.     ZOSTAVAX's efficacy four years after vaccination is zero.

388.     ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

389.     ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

390.     MSD knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

391.     The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

392.     From 2006 until 2017, MSD's professional representatives met physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

393.     MSD's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy

65

rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

394.    From 2006 until 2017, MSD held convention panels that were attended by physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

395.    During these convention panels, MSD represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

396.    Since May 2006 and during all relevant times, ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements were published and run in magazines targeting 50-year-old-and-older adults, and in broadcast television, cable television, mainstream radio, and other broadcast media outlets.

397.    ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements represented to their viewers, hearers, and/or readers that shingles always causes pain in every patient.

398.    Shingles is not always accompanied by pain.

399.    ZOSTAVAX was not approved to treat pain.

400.    Shingles is not always accompanied by painful blisters or blistering rash.

401.    ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements' representations regarding pain occurrence with shingles were false and misleading.

402.    Viewers and consumers who saw or read the ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly effective.

403.    Viewers and consumers who saw or read ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements relied upon the advertisements' representation that ZOSTAVAX was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

404.    The ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements concealed from their viewers and readers that ZOSTAVAX vaccine can cause the reactivation of the chickenpox virus and cause shingles.

405.    MSD knew that the ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements' representations were false and misleading.

406.    MSD is liable for the false representations made in the television commercials, radio commercials, and print advertisements between it is Merck's agent and Merck is its agent.

407.    MSD is liable for the false representations made in the television commercials, radio commercials, and print advertisements between no corporate distinction exists between MSD and Merck.

408.    MSD had the duty to disclose to the Plaintiff and Plaintiff's physicians and healthcare providers of the defective design and formulation of the ZOSTAVAX vaccine, which heightened the risk of suffering the injuries, diseases, and maladies that Plaintiff suffered as a result as alleged.

409.    MSD was also under a duty to disclose to Plaintiff and Plaintiff's healthcare providers of the defective or ineffective nature of the ZOSTAVAX vaccine that it manufactured, marketed, distributed, and sold to them.

410.    MSD had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

411.    MSD knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

412.    MSD knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

413.    MSD's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine.

414.    MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.

415.    MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus.

416.    MSD's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine.

417.    MSD intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public.

418.    MSD omitted material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public

68

419.    MSD concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public

420.    MSD intentionally misrepresented material facts concerning the safety of the ZOSTAVAX vaccine to induce Plaintiff to rely upon MSD's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

421.    MSD intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon MSD's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

422.    At the time MSD made these misrepresentations, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff and Plaintiff's physicians and/or pharmacists were unaware of the representations' falsehoods, and reasonably believed them to be true.

423.    MSD intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff to rely upon MSD's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

424.    MSD intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon MSD's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

425.    At the time MSD concealed and/or intentionally omitted material facts regarding the safety and efficacy of the ZOSTAVAX vaccine, and at the time that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff, Plaintiff's physicians and pharmacists, and the medical community were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

426.    MSD knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

427.    MSD knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

428.    MSD knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

429.    MSD knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

430.    MSD's fraudulent misrepresentations were made with the intent of defrauding and deceiving the public, consumers, the medical community, the Plaintiff, and also inducing the medical community, Plaintiff, and the public, to recommend, prescribe, dispense, and purchase the ZOSTAVAX vaccine.

431.    MSD knew and had reason to know that Plaintiff, Plaintiff's physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

432.    Plaintiff would not have purchased and used the ZOSTAVAX vaccine if Plaintiff knew the true facts regarding its safety and efficacy.

433.    Plaintiff's physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

434.    Plaintiff reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

435.    Because Plaintiff reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

436.    Plaintiff's physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiff for the long-term prevention of shingles and pain.

437.    Because Plaintiff's physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

438.    MSD's false representations regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

439.    MSD's false representations regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiff.

440.    MSD's intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

441.    MSD's intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiff.

442.    As a foreseeable, direct, and proximate result of MSD's intentional false representations, concealment, and omissions of material, Plaintiff suffered the serious injuries alleged herein.

443.    As a direct and proximate consequence of MSD's fraudulent misrepresentations, omissions, and concealment of material fact, Plaintiff sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

## McKesson

444.    McKesson represented to the medical community, the FDA, and consumers, including the Plaintiff and Plaintiff's health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective.

445.    McKesson knew or believed at the time it made its misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

446.    McKesson made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, such as Plaintiff.

447.    McKesson's fraudulent misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia to consumers over the age of 59;  longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did *not* induce serious side effects (such as shingles, post-herpetic neuralgia, retinal necrosis, keratitis and acute myelitis).

448.    McKesson designed, created, and disseminated information available on the labeling of ZOSTAVAX vaccine as it was administered to Plaintiff.

449.    The ZOSTAVAX labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiff.

450.    McKesson also disseminated this misleading information in its patient information materials, brochures, and marketing materials.

451.    McKesson's website includes information that the ZOSTAVAX vaccine prevents the reactivation of the zoster virus, to effectively prevent shingles.

452.    McKesson created, developed, designed, and implemented the marketing and sales strategy for ZOSTAVAX.

453.     McKesson gave presentations to persons that were directly involved with in-person marketing and sales of ZOSTAVAX to physicians and/or hospitals.

454.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during these presentations.

455.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX did <u>not</u> cause shingles during these presentations.

456.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

457.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

458.     Since May 2006, when ZOSTAVAX was approved by the FDA for commercial marketing in the United States, McKesson represented the following material information to the public:

    a.   That adult shingles causes pain in almost every instance;

    b.   That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it;

   c.   That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles;

   d.   That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

   e.   That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults;

   f.   That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

   g.   That ZOSTAVAX was a "well-studied vaccine."

   h.   That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

   i.   That ZOSTAVAX would benefit its users "in the ***prevention of long-term nerve pain from shingles*** (post-herpetic neuralgia) ***can be primarily attributed to the vaccine's effect on the prevention of shingles***." (emphasis added).

   j.   That the efficacy of ZOSTAVAX is 51% for everyone.

   k.   That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

   l.   That the immunity provided by ZOSTAVAX was unlimited.

   m.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

   n.   That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

   o.   That ZOSTAVAX was safe.

   p.   That ZOSTAVAX was effective.

459.   McKesson made the aforesaid statements (alleged in paragraph 458) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

460.   McKesson made the aforesaid statements (alleged in paragraph 458) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiff's healthcare

providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read in 2006.

461.    McKesson made the aforesaid statements (alleged in paragraph 458) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read from 2006 until 2017.

462.    McKesson made he aforesaid statements (alleged in paragraph 458) in Community Health Care brochures that it designed, created, published, and disseminated to the public and specifically targeted for the care of adults over the age of 60.

463.    McKesson made he aforesaid statements (alleged in paragraph 458) in each State's Department of Health's Immunization Policies and Procedures that it designed, created, published, and disseminated to the public by and through each state government's health department, including Florida.

464.    McKesson's representations intentionally concealed the following material information:

   a. From 2006 until present date, McKesson intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

   b. From 2006 until present date, McKesson intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

   c. From 2006 until present date, McKesson intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

   d. From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, McKesson knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

465.    On June 13, 2006, when McKesson decided to omit information on the 2006 ZOSTAVAX vaccine's label, McKesson knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including each Plaintiff's healthcare providers, and by Plaintiff.

466.    On or about June 13, 2006, McKesson knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the cardiac events; the warnings and precautions of using a live virus vaccine; and the need to avoid close contact (including household contacts) with someone who may be pregnant and has not had chickenpox or been vaccinated against chickenpox, or someone who has problems with their immune system.

467.    On or about June 13, 2006, McKesson knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus and also lacked a precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals.

468.    From June 13, 2006, McKesson intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

469.    McKesson knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

470.    From 2006 until 2014, McKesson represented to the public, including directly to consumers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

471.    Since 2006, McKesson represented to the medical community, to the public, and directly to consumers that known adverse effects associated with ZOSTAVAX use were no more

serious that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

472.     McKesson represented that the effect of time since vaccination on ZOSTAVAX's vaccine efficacy is not statistically significant.

473.     McKesson represented that ZOSTAVAX protected its users for shingles indefinitely.

474.     McKesson's representation that the effect of time since vaccination on ZOSTAVAX's vaccine efficacy is not statistically significant is false.

475.     McKesson's representations that ZOSTAVAX protected its users for shingles indefinitely were false.

476.     ZOSTAVAX's efficacy four years after vaccination is zero.

477.     ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

478.     ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

479.     McKesson knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

480.     The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

481.     From 2006 until 2017, McKesson's professional representatives met physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

482.     McKesson's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy

78

rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

483.    From 2006 until 2017, McKesson held convention panels that were attended by physicians throughout the United States in person, including Plaintiff's healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work.

484.    During these convention panels, McKesson represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

485.    McKesson had the duty to disclose to the Plaintiff and Plaintiff's physicians and healthcare providers of the defective design and formulation of the ZOSTAVAX vaccine, which heightened the risk of suffering the injuries, diseases, and maladies that Plaintiff suffered as a result as alleged.

486.    McKesson was also under a duty to disclose to Plaintiff and Plaintiff's healthcare providers of the defective or ineffective nature of the ZOSTAVAX vaccine that it marketed, distributed, and sold to them.

487.    McKesson had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

488.    McKesson, with Merck and MSD, had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

489.    McKesson knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

490.    McKesson knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

491.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true safety of the ZOSTAVAX vaccine.

492.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.  McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true risks of the ZOSTAVAX vaccine.

493.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing that it carried a real and serious risk of causing shingles and other injuries and conditions associated with the herpes zoster virus.

494.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true efficacy of the ZOSTAVAX vaccine.

495.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public.

496.    McKesson omitted material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public.

497.    McKesson concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiff, Plaintiff's physicians, consumers, and the public.

498.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff to rely upon McKesson's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

499.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

500.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff to rely upon McKesson's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

501.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers to rely upon McKesson's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

81

502.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiff's physicians and healthcare providers to rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiff's physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

503.    McKesson intentionally omitted and/or concealed facts concerning the safety of the ZOSTAVAX vaccine to induce the medical community to rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that the medical community would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

504.    At the time McKesson made these misrepresentations, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff was unaware of the representations' falsehoods, and reasonably believed them to be true.

505.    At the time McKesson intentionally omitted material facts, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff was unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

506.    At the time McKesson made these misrepresentations, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff's physicians and/or pharmacists were unaware of the representations' falsehoods, and reasonably believed them to be true.

507.    At the time McKesson intentionally omitted and concealed material facts, and at the times that the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff's physicians and/or pharmacists were unaware of the material facts regarding the true safety and efficacy of

ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

508.    McKesson knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

509.    McKesson knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

510.    McKesson knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

511.    McKesson knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

512.    McKesson's fraudulent misrepresentations were made with the intent of defrauding and deceiving the public, consumers, the medical community, the Plaintiff, and also inducing the medical community, Plaintiff, and the public, to recommend, prescribe, dispense, and purchase the ZOSTAVAX vaccine.

513.    McKesson knew and had reason to know that Plaintiff, Plaintiff's physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

514.    Plaintiff would not have purchased and used the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

515.    Plaintiff's physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

516.    Plaintiff reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

517.    Because Plaintiff reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

518.    Plaintiff's physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiff for the long-term prevention of shingles and pain.

519.    Because Plaintiff's physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

520.    McKesson's false representations regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

521.    McKesson's false representations regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiff.

522.    McKesson's intentional omissions of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

523. McKesson's intentional omissions of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiff.

524. McKesson's intentional concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

525. McKesson's intentional concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiff.

526. McKesson's intentional misrepresentations concerning the safety of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

527. McKesson's intentional misrepresentations concerning the efficacy of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

528. McKesson's intentional concealment and omissions of material facts concerning the safety of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

529. McKesson's intentional concealment and omissions of material facts concerning the efficacy of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

530. As a direct and proximate consequence of McKesson's fraudulent misrepresentations and concealment, Plaintiff was caused to suffer the serious and dangerous side effects, including a painful and persistent outbreak of the herpes zoster virus, the very condition the vaccine was intended to prevent. Plaintiff sustained serious personal injuries and related losses

including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages

531.    Each Defendant's omissions and purposeful misstatements were made on the day that ROBERT ERICKSON was inoculated with ZOSTAVAX at Lakeside Medical in 2007 in the form of the false information provided of the vaccine label and literature presented to Plaintiff, which induced his doctor to recommend ZOSTAVAX for the prevention of shingles, and further induced Plaintiff to purchase and inject the vaccine into his otherwise healthy body.

**COUNT VII:**
**NEGLIGENT MISREPRESENTATION**

532.    Defendants Merck, MSD, and McKesson had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiff, the truth regarding each Defendant's claims that the ZOSTAVAX vaccine had been tested, and found to be safe and effective for its stated purpose (preventing shingles.)

533.    The misrepresentations made by Merck, MSD, and McKesson, in fact, were false and Merck, MSD, and McKesson was careless or negligent in ascertaining the truth of the representations at the time Merck, MSD, and McKesson made the misrepresentations, including in 2007, when the misleading information was promulgated to Plaintiff ROBERT ERICKSON and his physician, David Fernandez.

534.    Merck, MSD, and McKesson, each of them, represented and marketed ZOSTAVAX as being safe for consumers over 60 years of age, and effective for long-term prevention of shingles.

**Merck**

535.    Merck had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiff, the truth regarding its claims that Merck's

86

product had been tested, and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

536.    Merck represented and marketed ZOSTAVAX as being safe and effective.

537.    Merck was aware of the risks of ZOSTAVAX. However, Merck failed to communicate to the Plaintiff and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

538.    Merck failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce. Merck negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

539.    Merck breached its duty in representing to the Plaintiff, their physicians and healthcare providers, and the medical community that Merck's product did not carry the risk of serious side effects such as those suffered by Plaintiff and other similarly situated patients.

540.    Merck failed to warn the Plaintiff and other consumers, of the defective condition of ZOSTAVAX, as manufactured and/or supplied by Merck.

541.    The misrepresentations made by Merck, in fact, were false.

542.    Merck was careless or negligent by failing to ascertain the truth of its representations at the time it made them.

543.    Merck negligently misrepresented material facts about ZOSTAVAX: it in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

544.    Alternatively, Merck made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

545.    The above misrepresentations were made to Plaintiff, Plaintiff's physicians and/or pharmacists, the medical community, as well as the general public.

546.    Plaintiff and their healthcare providers, pharmacists and physicians, justifiably relied on Merck's misrepresentations.

547.    Consequently, Plaintiff's use of ZOSTAVAX was to their own detriment as Merck's negligent misrepresentations proximately caused plaintiff's injuries and monetary losses.

548.    As a foreseeable, direct, and proximate result of Merck's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, Merck knew, or had reason to know, that Merck's product had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

549.    As a direct and proximate consequence of Merck's negligent misrepresentations, the Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## MSD

550.    MSD had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiff, the truth regarding its claims that MSD's product had been tested, and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

551.    MSD represented and marketed ZOSTAVAX as being safe and effective MSD was aware of the risks of ZOSTAVAX.  However, MSD failed to communicate to the Plaintiff and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

552.    MSD failed to communicate to the Plaintiff and other members of the general public, that the administration of the ZOSTAVAX vaccine would not remain effective past four years.

553.    MSD failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce.

554.    MSD negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

555.    MSD breached its duty in representing to the Plaintiff, their physicians and healthcare providers, and the medical community that the ZOSTAVAX vaccine did not carry the risk of serious side effects such as those suffered by Plaintiff and other similarly situated patients.

556.    MSD failed to warn the Plaintiff and other consumers, of the defective condition of ZOSTAVAX, as manufactured and/or supplied by MSD.

557.    The misrepresentations made by MSD, in fact, were false.

558.     MSD was careless or negligent by failing to ascertain the truth of its representations at the time it made them.

559.   MSD negligently misrepresented material facts about ZOSTAVAX: it in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

560.   Alternatively, MSD made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

561.   The above misrepresentations were made to Plaintiff, Plaintiff's physicians and/or pharmacists, the medical community, as well as the general public.

562.   Plaintiff and their healthcare providers, pharmacists and physicians, justifiably relied on MSD's misrepresentations.

563.   Consequently, Plaintiff's use of ZOSTAVAX was to their own detriment as MSD's negligent misrepresentations proximately caused plaintiff's injuries and monetary losses.

564.   As a foreseeable, direct, and proximate result of MSD's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, MSD knew, or had reason to know, that the ZOSTAVAX vaccine had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

565.   As a direct and proximate consequence of MSD's negligent misrepresentations, the Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## McKesson

566.  McKesson had a duty to accurately and truthfully represent to the medical community, state governments, and U.S. consumers, including Plaintiff, the truth regarding its claims that the ZOSTAVAX vaccine had been tested and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

567.  McKesson represented and marketed ZOSTAVAX as being safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

568.  McKesson was aware of the risks of ZOSTAVAX.

569.  McKesson failed to communicate to the Plaintiff and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

570.  McKesson failed to communicate to the Plaintiff and other members of the general public, that the administration of the ZOSTAVAX vaccine would not remain effective past four years.

571.  McKesson failed to exercise ordinary care in making representations concerning its product and its design, marketing, promotion, distribution, and sale in interstate commerce.

572.  McKesson negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

573.  McKesson breached its duty in representing to the Plaintiff, their physicians and healthcare providers, and the medical community that the ZOSTAVAX vaccine did not carry the risk of serious side effects such as those suffered by Plaintiff and other similarly situated patients.

574.    McKesson failed to warn the Plaintiff and other consumers, of the defective condition of ZOSTAVAX, as packaged, labeled, promoted, marketed, distributed, and sold by McKesson.

575.    The misrepresentations made by McKesson, in fact, were false.

576.    McKesson was careless or negligent by failing to ascertain the truth of its representations at the time it made them.

577.    McKesson negligently misrepresented material facts about ZOSTAVAX: it in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

578.    Alternatively, McKesson made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

579.    The above misrepresentations were made to Plaintiff, Plaintiff's physicians and/or pharmacists, the medical community, as well as the general public.

580.    Plaintiff and their healthcare providers, pharmacists and physicians, justifiably relied on McKesson's misrepresentations.

581.    Consequently, Plaintiff's use of ZOSTAVAX was to their own detriment.

582.    McKesson's negligent misrepresentations proximately caused plaintiff's injuries and monetary losses.

583.    As a foreseeable, direct, and proximate result of McKesson's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, McKesson knew, or had reason to know, that the ZOSTAVAX vaccine had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher

than reported and represented risks of adverse side effects such as those specifically described herein.

584.    As a direct and proximate consequence of McKesson's negligent misrepresentations, the Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages

585.    Defendants failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce. Merck, MSD, and McKesson negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product, including its known propensity to induce and onset herpes zoster virus.

586.    The above misrepresentations were made to Plaintiff ROBERT ERICKSON, as well as the general public, via the label and literature distributed to them at the time of vaccination, and the misleading safety and efficacy information relayed to Plaintiff's healthcare providers at seminars and by sales representatives on behalf of Defendants, who were promulgating falsities, as instructed by Ann Redfield and other members Merck's and MSD's vaccine team and risk management department.

587.    Plaintiff, and his healthcare providers, including David Fernandez, justifiably relied on the misrepresentations made by Merck, MSD, and McKesson, each of them, triggering Plaintiff and his physicians to purchase and recommend a defective and ineffective vaccine, ZOSTAVAX.

588.    Consequently, Plaintiff's use of ZOSTAVAX was to his own detriment as Defendants' negligent misrepresentations proximately caused Plaintiff's severe herpes zoster virus, and subsequent injuries and monetary losses.

589.    As a foreseeable, direct, and proximate result of Defendants' negligent misrepresentations as set forth herein, each Defendant knew, or had reason to know, that the ZOSTAVAX vaccine had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

590.    As a direct and proximate consequence of Defendants' negligent misrepresentations, Plaintiff ROBERT ERICKSON later contracted a serious strain of herpes zoster virus, and sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## COUNT VIII:
## UNJUST ENRICHMENT

### Merck

591.    Merck is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

592.    Plaintiff paid for the ZOSTAVAX vaccine for the long-term prevention of shingles.

593.    Merck has accepted payment by Plaintiff for the purchase of its product.

594.    Plaintiff has not received the safe and effective vaccine for which Plaintiff paid.

595.    It would be inequitable for Merck to keep this money if Plaintiff did not in fact receive safe and effective treatment for the prevention of shingles.

### MSD

596.     MSD is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

597.     Plaintiff paid for the ZOSTAVAX vaccine for the long-term prevention of shingles.

598.     MSD has accepted payment by Plaintiff for the purchase of the ZOSTAVAX vaccine.

599.     Plaintiff has not received the safe and effective vaccine for which Plaintiff paid.

600.     It would be inequitable for MSD to keep this money if Plaintiff did not in fact receive safe and effective treatment for the prevention of shingles.

### McKesson

601.     McKesson is and at all times was the marketer, promoter, packager, labeler, distributor, and seller of the ZOSTAVAX vaccine.

602.     Plaintiff paid for the ZOSTAVAX vaccine for long-term prevention of shingles.

603.     McKesson has accepted payment by Plaintiff for the purchase of the ZOSTAVAX vaccine.

604.     Plaintiff has not received the safe and effective vaccine for which Plaintiff paid.

605.     It would be inequitable for McKesson to keep this money if Plaintiff did not in fact receive safe and effective treatment for the prevention of shingles.

### COUNT IX:
### CONSUMER FRAUD

606.     Protection of Florida consumers is codified in the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

607.     Commercial behavior that constitutes "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" is unlawful pursuant to the

FDUTPA, and a consumer who suffered a loss as a result of this conduct may bring an action for damages.

608.    Merck is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

609.    MSD is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

610.    McKesson is and at all times was the marketer, promoter, packager, labeler, distributor, and seller of the ZOSTAVAX vaccine.

611.    At all relevant times, Merck, MSD, and McKesson engaged in continuous and pointed commercial marketing activity and introduced the ZOSTAVAX vaccine heavily into the stream of commerce within Florida and to Florida consumers.

612.    At all relevant times, Merck, MSD, and McKesson engaged in a distribution and sales strategy within the state of Florida intending to reach Florida consumers, including Plaintiff.

613.    At all relevant times, the ZOSTAVAX vaccine's aggressive marketing campaign, containing advertising techniques that evaded divulging the known serious risks and warnings to consumers, including Plaintiff, was unconscionable commercial behavior and is impermissible under FDUTPA.

614.    Defendants individually, and collectively by merit of their agency relationship to produce, promote and distribute ZOSTAVAX throughout Florida have collaborated on uniformity of marketing campaigns targeted toward Floridian residents, like Plaintiff, over the age of 59, to induce them to purchase the vaccine without knowledge of its tenuous efficacy and dangerous side effects, in violation of FDUTPA.

615.     Merck developed the label of the ZOSTAVAX vaccine with false assertions that it was effective in its intended purpose to prevent shingles, as later suffered by Plaintiff. The purposeful omission of this particular side effect on the product label is a violation of FDUTPA.

616.     McKesson distributed ZOSTAVAX throughout Florida, including to Plaintiff and his healthcare providers, knowing that it was packaged and labeled with misleading safety and efficacy information. McKesson's role in the creation of marketing materials and distributing the vaccine with a deficient label for the purpose of promoting sales to Florida residents, including Plaintiff, is a violation of FDUPTA.

617.     In the present matter Merck and McKesson engaged in continuous and pointed marketing activity and introduced the ZOSTAVAX vaccine heavily into the stream of commerce within Florida and to Florida consumers. Merck engaged in distribution and sales strategy within the state of Florida and intended to reach Florida consumers, including Plaintiff ROBERT ERICKSON.

618.     During 2009, Merck and MSD's research specialists for Merck's Vaccine and Biologics clinical research emailed about the desire to exclude or delete instances of adverse events attributable to ZOSTAVAX that occurred at any time greater than 42 days after vaccination from the mandatory reporting database. Merck in fact did exclude the key information for adverse incidents occurring after 42 days, and as a result of this conscious concealment of medical risks, prevented Plaintiff from being aware of adverse events, which he did in fact suffer in 2016. Consciously concealing certain adverse events of the ZOSTAVAX vaccine outside of narrowly defined time periods with the intention of misrepresenting the efficacy and safety of the vaccine is an unconscionable business practice under the FDUTPA.

619.    McKesson was also aware of side effects, adverse events, and tenuous efficacy of the ZOSTAVAX vaccine, including the adverse events after 42 days post-vaccination known to and concealed by Merck and MSD. McKesson downplayed and omitted this information to promote the vaccine which McKesson distributed and marketed as an agent of Merck throughout Florida and to Plaintiff.

620.    McKesson produced written marketing materials in 2007, the year in which Plaintiff was vaccinated, and created literature containing known false or misleading facts in the interest of promoting and distributing the ZOSTSVAX vaccine, in violation of FDUTPA.

621.    The aggressive marketing campaign, containing advertising techniques that evaded divulging the known serious risks and warnings to consumers, including Plaintiff, was unconscionable commercial behavior and is impermissible under FDUTPA.

622.    Merck and MSD had sole access to material facts concerning the nature of ZOSTAVAX, its efficacy, and its propensity to cause serious and dangerous injuries and damages to consumers who used the product.

623.    McKesson, with Merck and MSD, had sole access to material facts concerning the nature of ZOSTAVAX, its efficacy, and its propensity to cause serious and dangerous injuries and damages to consumers who used the product.

624.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true safety of the ZOSTAVAX vaccine.

625.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.  McKesson

knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true risks of the ZOSTAVAX vaccine.

626.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing that it carried a real and serious risk of causing shingles and other injuries and conditions associated with the herpes zoster virus.

627.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true efficacy of the ZOSTAVAX vaccine.

628.    Merck, MSD, and McKesson knew and had reason to know that the ZOSTAVAX vaccine was not effective for the long-term prevention of shingles and would not effective at all after four years post-inoculation.

629.    Merck, MSD, and McKesson intentionally misrepresented, omitted, and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers such as Plaintiff to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles and purchase the product to Merck's gain and to the consumers' detriment.

630.    At the time Merck, MSD, and McKesson concealed and intentionally omitted these material facts, and in 2007 when the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiff was unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

631.    Merck, MSD, and McKesson knew and had reason to know that consumers, including the Plaintiff and Plaintiff's physicians and healthcare providers that recommended, prescribed, purchased, administered, and/or otherwise used the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

632.    Plaintiff would not have purchased and used the ZOSTAVAX vaccine if Plaintiff knew the true facts regarding its safety and efficacy.

633.    Plaintiff's physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

634.    Plaintiff reasonably relied on Merck, MSD, and McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

635.    Because Plaintiff reasonably relied on Merck, MSD, and McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

636.    Plaintiff's physicians reasonably relied on Merck, MSD, and McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiff for the long-term prevention of shingles and pain.

637.    Because Plaintiff's physicians reasonably relied on Merck, MSD, and McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced

to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiff sustained severe and permanent personal injuries and damages.

638.     Merck, MSD, and McKesson's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, unfair conduct, deceptive conduct, and fraudulent conduct aimed towards consumers.

639.     As a direct and proximate consequence of Merck, MSD, and McKesson's unfair and deceptive acts and omissions, Plaintiff sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

640.     Plaintiff's injuries and damages were directly and proximately caused by the unfair and deceptive commercial acts of Merck, MSD, and McKesson.

## COUNT X:
## PUNITIVE DAMAGES

641.     Merck has been repeatedly admonished by the FDA about the manner in which it has marketed ZOSTAVAX to consumers and physicians.

642.     McKesson has been aware of the FDA's repeated admonishments of Merck's marketing of ZOSTAVAX.

643.     McKesson continued to market ZOSTAVAX in the same manner despite this knowledge.

644.     Merck, MSD, and McKesson, each of them, have repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which warnings relating to public hazards should be included in materials.

645.     Merck, MSD, and McKesson each has repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which warnings relating to public hazards should be included in materials. Defendants have engaged in other similar incidents with other drugs it sells and this evidence tends to show that overstating the benefits of a drug while minimizing the risk of the drug is a pattern and practice of Defendants, which continues even to the present time.

646.     Merck, MSD, and McKesson, each of them, has engaged in other similar incidents with other drugs it designs, markets, and sells; this evidence tends to show that overstating the benefits of a drug while minimizing the risk of the drug is a pattern and practice of Merck, MSD, and McKesson, each of them, which continues even to the present time.

647.     Merck's, MSD's, and McKesson's acts were willful and malicious in that each Defendant's conduct was carried on with a conscious disregard for the safety and rights of the public, consumers, and Plaintiff.

648.     Merck's, MSD's, and McKesson's unconscionable conduct thereby warrant an assessment of exemplary and punitive damages against Defendants in an amount appropriate to punish Defendants, and deter similar conduct in the future.

649.     Punitive damages are appropriate under Florida law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as follows:

    a.     For general damages in an amount to be proven at the time of trial;

    b.     For special damages in an amount to be proven at the time of trial;

    c.     For statutory damages as set forth above, in an amount to be proven at the time of trial;

    d.     For exemplary and punitive damages in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter Defendant and others from repeating the injurious conduct alleged herein;

    e.     For pre-judgment and post-judgment interest on the above general and special damages;

f.      For costs of this suit and attorneys' fees; and

g.      All other relief that this Court deems necessary, proper, and just.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

Dated: March 8, 2018                    Respectfully submitted,
                                        MARC J. BERN & PARTNERS LLP

                                        By: /s/ Carmen A. De Gisi
                                        CARMEN A. De GISI, ESQ.
                                        Florida Bar No: 97303
                                        101 West Elm Street, Suite 215
                                        Conshohocken, Pennsylvania
                                        Tel: (212) 702-5000
                                        Fax: (212) 818-0164
                                        Primary E-Mail. cdegisi@bernllp.com
                                        *Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that on the 8th day of March, 2018, I electronically filed the foregoing Second Amended Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to at Edward W. Gerecke at egerecke@carltonfields.com; Matthew F. Hall at matthew.hall@hwhlaw.com; and Brett J. Preston at brett.preston@hwhlaw.com.

<u>/s/ Carmen A. De Gisi</u>
Attorney for Plaintiff